[Nos. 22483-2-I; 22568-5-I. Division One. December 11, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT SCOTT BLAIR, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. SYDNEY LEON FORD, *Appellant.*

*Dennis A. Benjamin* and *Eric Broman* of *Washington Appellate Defender Association,* for appellants.

*Norm Maleng, Prosecuting Attorney,* and *Cheryl Strobert, Deputy,* for respondent.

PEKELIS, J.—Robert S. Blair and Sydney Ford appeal their juvenile court convictions of violating RCW 9A.56.070, taking a motor vehicle without permission. They allege that the trial court erred in (1) admitting their postarrest statements to the investigating officer, and (2) ordering restitution for damage to the car and for missing personal property.

SUBSTANTIVE FACTS

Dr. Bonnie Collins left her car, a 1977 brown Toyota station wagon, Washington license plate number WIF 475, in the parking lot of the Veterans Administration Hospital in Seattle at 7 a.m. on the morning of July 1, 1987. When she returned sometime after 6 p.m. on the evening of July 2, 1987, her car was missing. She had given no one permission to use the car.

Reese Brandon testified that he and three other young men, Eric Licht, Robert Blair, and Sydney Ford, rode in the car from the Beacon Hill area of Seattle to Oregon. Brandon testified that Blair, Ford and Licht took turns driving the car. He could not recall if he ever saw anyone use keys. Nor could he recall whether they had gotten to Oregon the same day or on another day, but he did not think it was on the same day that they left Seattle. The car fell into a ditch in a small town in Oregon, while Licht was driving.

The appellants were contacted on July 4, 1987, in Lincoln County, Oregon, by Deputy Sheriff Ralph Steele. They each gave statements to him. After a CrR 3.5 hearing, Steele was allowed to testify regarding the statements as follows:

Ford stated he was at Blair's house when all four young men were picked up in a brown Toyota driven by "Vincent Lamar."[1] Lamar drove them to a park in Oregon, where they slept in the car. The next day Mr. Lamar drove them into the mountains and told them that he had stolen the car and was going to Eugene. The appellants got out of the car in the mountains. Ford gave Steele a partial license plate number of the car as "Washington WIF." Blair's statement was consistent with Ford's.

Upon further investigation, the officer found a brown Toyota Corolla station wagon, Washington license WIF 475, at the end of a forest service road, backed down an embankment. There were no keys in the vehicle, and the officer observed that the ignition had been forced. Steele collected some personal property that had been strewn around the side of the road near the car.

### CrR 3.5 HEARING

Steele advised both Ford and Blair of their constitutional rights. He asked each of them whether they understood each of their rights individually. Blair's father was present during the advisements of rights and during the interview with Blair. Blair's speech was coherent; similarly, Ford did not appear to be affected by drugs or alcohol. Steele made no promises or threats to either juvenile. Neither said he wanted an attorney or wished to remain silent.

Although Blair did not expressly state that he was willing to waive his right to remain silent, he did begin to talk to Steele. At no point did Blair express a desire to discontinue making his statement.[2]

Attorneys for Blair and Ford objected to the admission of the statements at trial because Steele had not elicited an express waiver from each of them prior to their statements.

---

[1]Brandon testified he had never heard of anyone named "Vincent Lamore", and no such person was ever located.

[2]Appellants' statement of the facts indicates that the same was true for Ford, though the record does not explicitly support that.

They argued that this was a requirement under RCW 13.40.140(9). The trial court ruled that RCW 13.40.140(9) does not add another "layer" to the State's obligations under *Miranda,* and held that Blair and Ford had impliedly waived their right to remain silent. The statements were therefore admitted.

## RESTITUTION HEARING

The vehicle was taken on July 1 or July 2, 1987, and was ultimately recovered on July 5, 1987. It appears the car was sold in Oregon for salvage. Based on affidavits showing the value of the car, what the victim received on salvage, the towing bills, and some information regarding personal property that had been in the vehicle, the trial court assessed restitution in the amount of $1,791.09. The sum was assessed jointly and severally against each juvenile.

This timely appeal followed.

## ANALYSIS

The appellants argue that RCW 13.40.140(9) requires that the juvenile expressly waive his right to remain silent prior to giving the statement. They do not challenge the trial court's determination of implied waiver here or suggest that the waivers were constitutionally insufficient; they contend only that a statutory violation occurred.

It is clear that no constitutional infirmity exists here. Whether a juvenile has effectively waived his rights under *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966) depends upon the totality of the circumstances surrounding the interrogation. *Dutil v. State,* 93 Wn.2d 84, 88–89, 606 P.2d 269 (1980). These include the juvenile's age, experience, education, background, intelligence, and his capacity to effect a voluntary waiver. *State v. Jones,* 95 Wn.2d 616, 625, 628 P.2d 472 (1981). In *State v. Ellison,* 36 Wn. App. 564, 571, 676 P.2d 531, *review denied,* 101 Wn.2d 1010 (1984), the court held that a waiver of *Miranda* rights may be inferred when a juvenile defendant voluntarily discusses the charged crime

with police officers and indicates an understanding of his rights.

*Ellison* involved a juvenile who had an eleventh grade education, was in a special education program, and had difficulties with reading and comprehension. He did not sign a waiver form, and the police never specifically asked him if he wished to waive his rights to counsel and to remain silent. *Ellison,* 36 Wn. App. at 571. Nonetheless, because Ellison acknowledged that he understood his rights on more than one occasion, appeared to understand his rights, and responded to questions after initialing each right on a *Miranda* form card, the court held that his statements were admissible. *Ellison,* 36 Wn. App. at 571–72.

Appellants contend that RCW 13.40.140(9) creates a more stringent requirement of express waiver than may be required constitutionally since it provides:

> Waiver of any right which a juvenile has under this chapter must be an express waiver intelligently made by the juvenile after the juvenile has been fully informed of the right being waived.[3]

■■ Statutes are to be construed as a whole, giving effect to all the language used, considering all provisions in relation to each other and harmonizing them all whenever possible. *Newschwander v. Board of Trustees,* 94 Wn.2d 701, 707, 620 P.2d 88 (1980). When reading RCW 13.40.140 as a whole, it becomes clear that the "express waiver" language contained in subsection (9) does not apply to extrajudicial statements. Rather, the section refers generally, and the various subsections refer specifically, to those rights a juvenile has "when appearing before the court." *See* RCW 13.40.140(1). Moreover, to interpret subsection (9) as requiring an express waiver when a juvenile makes an extrajudicial statement would be in conflict with RCW 13.40.140(8) which provides that a "juvenile shall be

---

[3]RCW 13.40.140(9) was in effect at the time the *Ellison* opinion was written, though the particular argument made here regarding the language of that section was not raised in *Ellison.*

accorded the *same* privilege against self–incrimination as an adult." (Italics ours.)[4]

Thus, a proper construction of the statute leads to the conclusion that the Legislature intended a juvenile to have the same rights "under this chapter," that is, under RCW 13.40, as the juvenile has under *Miranda*. Our reading of subsection (9) is consistent with *State v. Rhodes,* 92 Wn.2d 755, 600 P.2d 1264 (1979), in which the court affirmed a determination that a juvenile had waived the right to counsel, where the *in–court* waiver was express. In that context, the court held there had been no violation of RCW 13.40-.140(9). *Rhodes,* 92 Wn.2d at 756–57.

Therefore, the trial court correctly concluded that RCW 13.40.140(9) does not require juveniles to expressly waive the right to remain silent. The court did not err in admitting the extrajudicial statements.

Blair and Ford next assign error to the trial court's restitution order, arguing that they should not have been ordered to pay restitution for the theft of the victim's personal property from the car and for the damage to the vehicle itself. They claim that these losses potentially occurred outside the charging period, and did not result directly from their conduct but rather from other uncharged crimes.

RCW 13.40.190(1) provides:

> In its dispositional order, the court shall require the respondent to make restitution to any persons who have suffered loss or damage as a result of the offense committed by the respondent.

A restitution order must be based on the existence of a causal relationship between the crime charged and proven

---

[4]Blair and Ford argue further that the word "express" would be superfluous unless their interpretation of RCW 13.40.140(9) is adopted. Their argument is based on the principle that the statutes are to be construed, whenever possible, so that no words are superfluous or insignificant. *See UPS, Inc. v. Department of Rev.,* 102 Wn.2d 355, 361–62, 687 P.2d 186 (1984). Under our analysis, however, the word "express" is not superfluous; it is merely limited in its application to in–court waivers.

and the victim's damages. *State v. Hartwell,* 38 Wn. App. 135, 139–40, 684 P.2d 778 (1984).

The appellants argue first that there was an insufficient causal connection between their crime and the loss of the victim's personal property. However, in *State v. Steward,* 52 Wn. App. 413, 760 P.2d 939 (1988), this court upheld a restitution order under facts very similar to those presented here. There the juvenile respondent was charged with taking a vehicle under the identical statute, RCW 9A.56.070. She was ordered at a restitution hearing to pay for certain items missing from the vehicle, although she denied having damaged the car or taken anything from it. The trial court found that the defendant had abandoned the vehicle with the keys in the ignition, and concluded that "even if she had not taken or directed the taking of such contents, it was foreseeable and likely to a reasonable person that the car would be subject to stripping and theft of the contents of the car." *Steward,* 52 Wn. App. at 415. This court affirmed, holding that the theft occurred as a result of the offense charged. *Steward,* 52 Wn. App. at 416.

Here, the evidence showed that appellants drove or rode in the car and left it abandoned at the end of a rural road. Objects of personal property were found strewn around the area when the car was recovered several days later. The trial court ruled that the appellants "either took . . . or facilitated through their abandonment of the car, the loss of the other personal property that was within the car." We hold that the trial court did not err in concluding that the taking and subsequent abandonment of the car resulted in the theft of the personal property. The order of restitution properly included losses due to the theft.

Ford and Blair next contend that they cannot be held responsible for damage to the vehicle because it was the result of Licht's poor driving, and unrelated to their conduct. They cite *Hartwell, supra,* in support of their position. We find *Hartwell* distinguishable.

There, the court reversed the trial court's restitution order because it required the defendant to pay for losses

incurred in an accident which *preceded* the crime of hit–and–run with which he was charged. The driver's fault in causing the accident was held to be independent of the charge of hit–and–run. *Hartwell*, 38 Wn. App. at 140–41. Here, on the other hand, but for the acts of taking, driving and riding in the vehicle, the subsequent accident resulting in damage to the car would not have occurred. The damage was a direct result of the "driving" "without the permission of the owner". *See* RCW 9A.56.070.

Moreover, under RCW 9A.56.070(1), the statute under which Ford and Blair were convicted, they are "equally guilty with the person taking or driving" the automobile. Additionally, RCW 13.40.190(1) provides that all participants in a crime are jointly and severally responsible for the payment of restitution. Thus, since restitution could properly be imposed on the driver Licht for losses due to the damage to the vehicle, it can also be imposed on Ford and Blair. Not only are they equally guilty for the charged crime under the law, their actual participation in the crime justifies holding them responsible for the victim's damages.

■ In sum, it was within the trial court's discretion to order Blair and Ford to pay restitution both for the damage to the vehicle and for the missing personal property.

Affirmed.

SWANSON and WINSOR, JJ., concur.