844 P.2d 1167

**STATE of Arizona, Appellee,**

v.

**James L. BLANTON, Appellant.**

**Nos. 1 CA–CR 91–1107,
1 CA–CR 91–1457.**

Court of Appeals of Arizona,
Division 1, Department A.

Nov. 5, 1992.

Redesignated as Opinion and
Publication Ordered Jan. 26, 1993.

**518**

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, Diana P. Stabler, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Edward F. McGee, Deputy Public Defender, Phoenix, for appellant.

## OPINION

McGREGOR, Judge.

Appellant/defendant James L. Blanton (appellant) contends that the trial court abused its discretion by ordering restitution to the insurance carrier that settled a wrongful death action arising from the criminal conduct of appellant and by ordering restitution for certain funeral expenses. We disagree and affirm.

### I.

On October 27, 1989, appellant was involved in a one-car accident in which appellant's passenger, Stephen Thomas (Thomas) was killed. Witnesses saw appellant's vehicle speeding and swerving prior to the accident. Appellant's blood alcohol content was .12.

On February 5, 1991, a grand jury indicted appellant on one count of manslaughter, a class 3 felony. On June 19, 1991, pursuant to a written plea agreement, appellant plead guilty to negligent homicide, a class 4 felony. The plea agreement contained no stipulation as to the sentence, but required that appellant pay restitution to the victim.

At sentencing on July 17, 1991, the trial court placed appellant on four years probation with six months incarceration in the Maricopa County jail. The trial court also required appellant to pay restitution in the amount of $92,349.75. The restitution consisted of $85,000.00 to American Family Life Insurance (American Family) for funding the settlement in a wrongful death action brought against appellant, $5,499.75 to American Family for payment of funeral expenses, and $1,850.00 to Thomas's parents for payment of additional funeral expenses, including a headstone, flowers, chapel music, minister's honorarium, and chapel fee.

On October 4, 1991, the trial court conducted a restitution hearing at appellant's request. At the conclusion of the hearing, the trial court modified its earlier order and increased the total restitution to $92,575.75 due to documentation of additional funeral expenses paid by Thomas's parents.

Appellant appeals from the judgment and July 17, 1991 sentence and from the October 4, 1991 restitution order. We have jurisdiction pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") §§ 12–120.21 A, 13–4031, and –4033.

## II.

■ The trial court has broad discretion in sentencing. *State v. Stotts,* 144 Ariz. 72, 87, 695 P.2d 1110, 1125 (1985). A reviewing court will not find an abuse of discretion in sentencing unless the decision is characterized by arbitrariness, capriciousness, or failure to conduct an adequate investigation into the facts relevant to sentencing. *Id.*

## A.

Appellant argues that the trial court abused its discretion by requiring him to pay restitution to American Family, Thomas's underinsured motorist carrier. Before appellant plead guilty in this case, Thomas's heirs brought a wrongful death action in Nebraska. Pursuant to a negotiated settlement, Thomas's three minor children received $100,000. The settlement agreement distributed the money in four equal parts among the three children and their lawyer.

In accord with Nebraska law, $15,000 from appellant's insurer, already paid to the Thomas estate, was subtracted from the total settlement amount, leaving $85,-000 to be paid by American Family to settle the action. Additionally, American Family paid $5,499.75 in funeral expenses from its med-pay coverage.

### 1.

■ Appellant concedes that he may have been liable to make restitution to Thomas's heirs pursuant to A.R.S. §§ 13–603 C and 13–804. He argues, however, that this obligation was discharged when Thomas's heirs settled their wrongful death claim with appellant's insurance carrier and American Family. Appellant contends that he now owes no restitution to American Family because of the restrictions on restitution created by the language of A.R.S. § 13–603 C.

Section 13–603 C provides in part: "If a person is convicted of an offense, the court shall require the convicted person to make restitution to the person who is the victim of the crime *or to the immediate family of the victim if the victim has died,* in the full amount of the economic loss as determined by the court...." (Emphasis added.) Appellant argues that the statute implicitly excludes restitution to such inanimate entities as corporations and insurance companies in cases in which the victim dies because the criminal code contains no definition of the term "immediate family" that would include an insurance carrier.

This court addressed a similar issue in *State v. Merrill,* 136 Ariz. 300, 665 P.2d 1022 (App.1983). The defendant in *Merrill* argued that an insurance company was not a "victim" within the meaning of Arizona's restitution statutes and that restitution is payable only to the direct victims of crimes. *Id.* at 301, 665 P.2d at 1023. We rejected both arguments, holding that the legislative requirement of full restitution and the policies underlying mandatory restitution are "best fulfilled if 'victim' includes the entity suffering the economic loss resulting from appellant's criminal activity." *Id.* Moreover, we concluded, "Using [appellant's] interpretation, a trial judge could find that the immediate victim of the crime, fully reimbursed by an insurance carrier, has not suffered any economic loss, thus precluding any order of restitution. We do not believe that the legislature intended such a result." *Id.* Although Merrill interpreted an earlier version of the statute,[1]

1. That version of A.R.S. § 13–603 C read as follows:

C. If the court imposes probation it may also impose a fine as authorized by chapter 8 of

we have held the current version of A.R.S. § 13–603 C reflects the same legislative policy. *State v. Morris*, 173 Ariz. 14, 839 P.2d 434 (App.1992).

In this case appellant concedes he would have owed restitutionary damages to Thomas's children for the recognized economic loss of future lost wages, which the children could recover in a wrongful death action. Uncontradicted evidence presented at the restitution hearing established that the $85,000 paid in settlement by American Family represented payment for economic loss. A senior attorney for American Family testified at the restitution hearing that the settlement represented only lost wages, based upon Thomas's annual salary of $61,-000 and survival by three minor children ranging in age from five to eight. American Family's attorney also testified that the settlement did not include any compensation for pain and suffering. The settlement payment therefore was for economic loss as defined in A.R.S. § 13–105(11) (economic loss includes lost earnings); *see State v. Iniguez*, 169 Ariz. 533, 538–39, 821 P.2d 194, 199–200 (App.1991).

We conclude that, after paying $85,000 in the negotiated settlement, American Family took the place of Thomas's immediate family and is eligible for restitution. *See Morris*, 173 Ariz. at 16–17, 839 P.2d at 436–437.

### 2.

Appellant alternatively argues that if American Family is eligible for restitution, appellant should not be liable for the portion of the negotiated settlement paid to Thomas's heirs' attorney in the wrongful death action. Appellant argues that the attorney is not an "immediate family member" under A.R.S. § 13–603 C and that the attorney's fees are not an economic loss as defined in A.R.S. § 13–105(11).

Appellant's argument overlooks a critical fact. The trial court did not order appellant to pay the attorney's fees. Rather, the court ordered appellant to pay the amount American Family paid to Thomas's heirs to settle the lawsuit. What the children chose to do with the settlement they received is not relevant to determining restitution.

The trial court's order falls within the limits of the statutes authorizing restitution and is consistent with the evidence offered by American Family to substantiate its claim. *See Stotts*, 144 Ariz. at 87, 695 P.2d at 1125. Thus, the trial court did not abuse its discretion by awarding restitution to American Family.

### B.

Appellant also argues that the trial court abused its discretion by awarding restitution to Thomas's parents for a headstone, flowers, chapel music, minister's honorarium, and chapel fee. Appellant concedes liability for basic burial expenses, but argues that the expenses listed above result from the bereavement and religious practices of Thomas's survivors and therefore are more like consequential damages than actual "economic loss."

■ Whether specific expenses are economic losses depends upon whether a causal connection exists between the criminal conduct and the claimed loss. *Morris*, 173 Ariz. at 18, 839 P.2d at 438. Arizona's restitution statutes direct the court to utilize a "but for" or a "direct result" analysis when ordering restitution. *Id.* at 17, 839 P.2d at 437 (citing A.R.S. § 13–105(11)).

■ In this case, the funeral expenses outlined above resulted directly from appellant's criminal act; but for appellant's act of causing Thomas's death, these expenses would not have occurred. The trial court, which carefully reviewed each claimed item of economic loss, did not abuse its discretion in finding that these expenses are economic losses within the meaning of the statute. *See State v. Fancher*, 169 Ariz. 266, 268, 818 P.2d 251, 253 (App.1991).

this title and shall require the convicted person to make restitution to the victim of the crime in such amount and manner as the

court may order, after consideration of the economic loss to the victim and the economic circumstances of the convicted person.

## III.

We have reviewed the record for fundamental error pursuant to A.R.S. § 13–4035 and have found none. We affirm the judgment, sentence and restitution order.

LANKFORD, P.J., and O'MELIA, J.,* concur.