868 P.2d 365

**In the Matter of the APPEAL IN MARICOPA COUNTY JUVENILE ACTION NO. JV–128676.**

No. 1 CA–JV 93–029.

Court of Appeals of Arizona, Division 1, Department C.

Feb. 8, 1994.

Dean W. Trebesch, Maricopa County Public Defender by Suzette Pintard, Anne–Rachel Aberbach, Deputy Public Defenders, Phoenix, for Juvenile.

Richard M. Romley, Maricopa County Atty. by Diana Wilkes, Deputy County Atty., Phoenix, for the State.

## OPINION

TOCI, Presiding Judge.

E.G., a juvenile, accepted a ride in a car stolen by another juvenile. When the stolen car was recovered, the victim observed that the car had been damaged and that certain items of personal property were missing. E.G. admitted delinquency and was later adjudicated delinquent of criminal trespass in the second-degree. The juvenile court found that E.G., another juvenile passenger, and the juvenile who stole the car were jointly and severally liable for the damage to the car and for the value of the missing items. The court then ordered E.G. to pay restitution to the victim. E.G. appeals from the restitution order.

The sole issue is whether a juvenile adjudicated delinquent for criminal trespass may be ordered to pay restitution where no evidence exists that the victim's damages were directly related to the juvenile's offense. We conclude that because the record fails to establish a direct causal relationship between E.G.'s criminal trespass and the victim's damages, the trial court should not have ordered E.G. to pay restitution. Therefore, we vacate the restitution order.

## FACTS AND PROCEDURE

After the stolen car was recovered, the victim discovered that the car had been damaged and certain items of personal property removed. The steering column was cracked, the headlights smashed, an ashtray and the glove box broken, and the tinted windows scratched. In addition, a Walkman cassette player and eight cassettes were missing from the car. The victim established through a verified statement that the damage to the car plus the value of the missing items amounted to $956.69.

The state charged E.G. with one count of possession of dangerous drugs, one count of possession of marijuana, and one count of criminal trespass in the second degree. In a plea agreement, in exchange for the state's promise to dismiss the remaining two charges, E.G. admitted committing criminal trespass in the second degree. Without admitting liability for the victim's damages, E.G. agreed to pay restitution up to a maximum of $750.00 if found legally responsible for the damages.

At the adjudication hearing, the juvenile court accepted E.G.'s plea agreement and found that he committed second-degree criminal trespass in violation of Ariz.Rev.Stat. Ann. ("A.R.S.") sections 13–1501 and 13–1503 (1989 and Supp.1993). The factual basis for the plea agreement was E.G.'s admission that "[he] got in the car that [he] knew was stolen." After dismissing both drug possession charges, the court placed E.G. on probation and ordered that he pay restitution of $956.69.[1] The court also entered an order holding E.G. and the other two juveniles jointly and severally liable for such restitution.

## DISCUSSION

We will not disturb the juvenile court's disposition of a juvenile delinquent except for abuse of discretion. *In re Appeal in Maricopa County Juvenile Action No. JV–503009*, 171 Ariz. 272, 274, 830 P.2d 484, 486 (App.1992); A.R.S. § 8–241 (Supp.1993). In exercising its discretion, the juvenile court is not, however, authorized to misapply the law or a legal principle. *City of Phoenix v. Geyler*, 144 Ariz. 323, 328–29, 697 P.2d 1073, 1079–80 (1985). Here, the trial court misapplied the law of restitution.

It is clear that the juvenile court is authorized to make appropriate orders of restitution. A.R.S. section 8–241(C)(1) provides that "The [juvenile] court shall ... order ... a delinquent child ... [t]o make full or partial restitution to the victim of the offense for which the child was adjudicated delinquent." The statute does not, however, define the limits of restitution in a juvenile case. Thus,

we look to the restitution statutes and case law employed in the adult criminal prosecution context for guidance in determining whether restitution should be awarded in this juvenile matter.

A.R.S. section 13–603(C) (Supp.1992) requires that restitution be paid "to the person who is the victim of the crime ... in the full amount of economic loss as determined by the court." "Economic loss" is defined in A.R.S. section 13–105(11) (Supp.1992) as:

> [A]ny loss incurred by a person as a result of the commission of an offense. Economic loss includes lost interest, lost earnings and *other losses which would not have been incurred but for the offense.* Economic loss does not include losses incurred by the convicted person, damages for pain and suffering, punitive damages or consequential damages.

(Emphasis added.)

Whether a victim's damages are recoverable as economic losses depends on the existence of a causal connection between the criminal conduct and the claimed loss. In making this determination, "Arizona restitution statutes direct the trial court to utilize a 'but for' or a 'direct result' analysis...." *State v. Blanton*, 173 Ariz. 517, 520, 844 P.2d 1167, 1170 (App.1992). *See also State v. Foy*, 176 Ariz. 166, 170, 859 P.2d 789, 793 (App. 1993). This court has also interpreted economic loss to mean losses that are directly attributable to the offense, that "flow" from it, and that are not considered consequential damages. *State v. Reynolds*, 171 Ariz. 678, 681, 832 P.2d 695, 698 (App.1992).

Nevertheless, we have refused to extend payment of restitution to those who, although they have suffered losses as a result of the defendant's conduct, are not victims of the charged crime. *See State v. French*, 166 Ariz. 247, 249, 801 P.2d 482, 484 (App.1990) (motel owner was not victim of crime of sexual assault and thus was not entitled to restitution for damages to motel room incurred during course of sexual assault); *State v. Whitney*, 151 Ariz. 113, 114, 726 P.2d 210, 211 (App.1985) (defendant who pled

---

1. The juvenile court later modified the order to make it consistent with the terms of E.G.'s plea agreement by reducing E.G.'s liability to a maximum of $750.00.

guilty to car theft not liable for restitution to third party who suffered damages in collision with stolen car). We have stated this principle as follows: "[A] defendant may be ordered to pay restitution only for an offense that he has admitted, upon which he has been found guilty, or upon which he has agreed to pay restitution." *Id.*

E.G. argues that *French* and *Whitney* stand for the proposition that he cannot be required to pay restitution for conduct that constitutes an "uncharged offense." We do not read these cases so broadly. Both cases dealt with this court's effort to determine whether the term "victim," as it is used in A.R.S. section 13–603(C), includes a third party who suffers a loss as a result of the defendant's criminal conduct. It was in that context that we held that a defendant may be liable for restitution to a *third party*, "only for an offense that he has admitted, upon which he has been found guilty, or upon which he has agreed to pay restitution." *French*, 166 Ariz. at 249, 801 P.2d at 484; *Whitney*, 151 Ariz. at 114, 726 P.2d at 211. Neither case examined the issue whether, under A.R.S. section 13–105(11), the victim's losses were "directly attributable" to the crime for which defendant was convicted. Likewise, neither case dealt with the question whether, assuming a direct relationship between the damage sustained by the victim of the crime and the offense for which defendant was convicted, restitution is unavailable because the loss is also the result of acts that might constitute an "uncharged crime."

█ Thus, we reject as too broad E.G.'s argument that he cannot be liable for restitution because the victim's losses were a result of "uncharged offenses." We agree with E.G. that the damage to the victim's car directly resulted from conduct that is normally punished by the offense of theft[2] or the offense of criminal damage,[3] or both. And, the loss of the Walkman and cassette tapes flows from conduct that is usually punished by the offense of theft. Nevertheless, these circumstances do not preclude an award of restitution. If the state had produced sufficient evidence that the victim would not have sustained a loss but for the juvenile's conduct in committing the offense of criminal trespass, the fact that the loss was also the result of acts that might constitute an "uncharged crime" does not excuse the payment of restitution. *See Faulkner v. Florida*, 582 So.2d 783, 784 (Fla.Dist.Ct.App. 1991); *Washington v. Harrington*, 56 Wash. App. 176, 782 P.2d 1101, 1103 (1989).

In *Harrington*, 782 P.2d at 1102, a juvenile adjudicated delinquent for possession of a stolen car was ordered by the trial court to pay restitution for damage to the car.[4] On appeal, the juvenile argued that the restitution order was invalid because he pled guilty to a possessory crime which punishes conduct that could not by itself be the cause of damage to the car. The juvenile contended that the damage to the car was the result of acts that constitute other uncharged crimes, such as malicious mischief. The Washington Court of Appeals rejected this argument, concluding "[t]he fact that the damage was the immediate result of specific acts which might constitute an 'uncharged crime' cannot be used to legally excuse" the payment of restitution. *Id.* at 1103. The court found sufficient evidence "that but for [the juvenile's] illegal act, the victim's property would not have been in a position to sustain the damages it did." *Id.* In affirming the trial court, the *Harrington* court concluded "[t]he trial court's finding that Harrington's possession of the stolen property was causally related to the victim's loss is a legally and factual-

---

**2.** A.R.S. section 13–1802 (1989) provides in part:

  A. A person commits theft if, without lawful authority, such person knowingly;
  1. Controls property of another with the intent to deprive him of such property; ...

**3.** A.R.S. § 13–1602 (1989) provides in part:

  A. A person commits criminal damage by recklessly:
  1. Defacing or damaging property of another person; or

  2. Tampering with property of another person so as substantially to impair its function or value; ...

**4.** Wash.Rev.Code § 13.40.190(1) (1993) provides:

  In its dispositional order, the court shall require the respondent to make restitution to any persons who have suffered loss or damage *as a result of the offense committed by the respondent.* (Emphasis added.)

ly sufficient basis for the restitution order." *Id.*

Here, however, the state conceded in its oral argument, and we agree, that the record contains no evidence that the victim's damages directly resulted from E.G.'s criminal trespass.[5] In our view, this lack of evidence resolves the issue. The juvenile was adjudicated delinquent of criminal trespass—the crime of entering or unlawfully remaining in the victim's car. The factual basis for the juvenile's plea is that he got into a car that he knew was stolen. The state did not establish that either the damage to the car or the loss of personal property from it is "directly attributable to the offense" or is something that would not have occurred "but for" the juvenile's conduct. *See Faulkner,* 582 So.2d at 784 (restitution proper where significant relationship exists between the loss or damage sustained by the victim and the defendant's acts in committing the offense for which he was convicted).

Had E.G. been adjudicated delinquent for theft of the car, at least a part of the juvenile court's restitution award would have been proper. Both A.R.S. section 13–105(11) and the case law defining economic loss support the conclusion that the damage inflicted upon the car in the act of stealing it is a loss that would not have occurred "but for the offense." *See State v. Blair,* 56 Wash.App. 209, 783 P.2d 102, 105 (1989) (restitution proper where juvenile adjudicated delinquent for car theft caused damage to stolen car in collision following theft). And, under certain circumstances, the restitution order for the victim's loss of the items in the car would have been proper. *See id.* (restitution proper where loss of victim's personal property " 'facilitated through ... abandonment of [stolen] car' ").

Nevertheless, E.G. neither admitted committing car theft, criminal damage, or theft of the personal property, nor was he adjudicated delinquent for such charges. The record further establishes that E.G. never unconditionally agreed to pay restitution. Rather,

E.G. agreed to pay restitution only if found legally responsible for the damages. Because the record does not contain any evidence that the victim's losses were in any way a direct result of E.G.'s conduct in accepting a ride in the stolen vehicle, he is not "legally responsible" for restitution.

Although the state argues to the contrary, A.R.S. section 13–804(E) (Supp.1992), provides no support for the juvenile court's order of restitution. That statute authorizes the court to impose joint and several liability "[i]f more than one defendant is *convicted of the offense which caused the loss.*" *Id.* (emphasis added). As we discuss above, the record is devoid of any evidence that E.G. was adjudicated delinquent of the offense "which caused the loss." Neither is there any evidence in the record that any one of the other two juveniles was adjudicated delinquent of any offense.

The state cites *Reynolds* and *State v. Pearce,* 156 Ariz. 287, 751 P.2d 603 (App. 1988), in support of its assertion that restitution is appropriate because the victim has a civil action against E.G. for trespass to chattels. We disagree with the state's analysis of these cases. First, neither *Reynolds* nor *Pearce* involved the question at issue here: whether the victim's losses directly resulted from the offense for which the defendant was convicted so as to make an award of restitution proper in the first instance. In both cases, the defendants admitted their responsibility for restitution by executing plea agreements in which they agreed to pay restitution. *Reynolds,* 171 Ariz. at 679, 832 P.2d at 696; *Pearce,* 156 Ariz. at 287–88, 751 P.2d at 603–04. Thus, the issue in both cases was the *measure* of restitution rather than the defendant's *responsibility* for it.

Second, the reference in *Pearce,* 156 Ariz. at 289, 751 P.2d at 605, to "the corresponding civil action" does not establish that the amount of restitution in a theft case must be equivalent to the measure of damages in a civil case. In *Reynolds,* we observed that the *Pearce* court was "simply attempting by

---

5. A.R.S. section 13–1503 provides in relevant part:

    A. A person commits criminal trespass in the second degree by *knowingly entering or remain-*

*ing unlawfully* in or on any nonresidential structure or in any fenced commercial yard. (Emphasis added.)

illustration to distinguish loss that was the direct result of the theft from lost profits that were consequential to the theft." 171 Ariz. at 682, 832 P.2d at 699. *Reynolds* also rejected the argument that the measure of damages applicable in a tort case is necessarily the same measure of economic loss that applies in the criminal context. *Id.* at 681, 832 P.2d at 698.

Additionally, the state claims that because E.G. entered the car he "knew was stolen," he is responsible for all damages caused to the car while it was stolen. In support of this argument, the state cites *State v. Hall*, 129 Ariz. 589, 633 P.2d 398 (1981), and *State v. Lopez*, 173 Ariz. 552, 845 P.2d 478 (App. 1992). In both of these cases, the court, after applying a proximate cause analysis, held that the defendants *indirectly* caused the deaths of their respective victims by setting in motion a chain of events whose natural and probable result was the victim's death. *See Hall*, 129 Ariz. at 594–95, 633 P.2d at 404–05; *Lopez*, 173 Ariz. at 555–56, 845 P.2d at 451–52. The restitution statute, however, provides for compensation to the victim only for losses *directly* caused by the defendant's criminal conduct. Consequently, the principles of proximate cause enunciated in *Hall* and *Lopez* do not apply here.

The state also argues that E.G. is responsible for restitution under conspiracy or accomplice liability theories. Again, we disagree. E.G. did not admit to being an accomplice or a party to a conspiracy. Neither was he adjudicated delinquent as an accomplice or as a conspirator. And, E.G. did not agree to pay restitution for the victim's damages under either theory. Thus, under *Whitney*, the restitution order has no underpinning in conspiracy or accomplice liability theory.

■ The state further argues that this court should uphold the restitution order on grounds that the balance of equities lies with the innocent victim. We disagree. As a court of law, we are bound by the plain and positive provisions of statutes, and "where rights are clearly established and defined by statute, equity has no power to change or upset such rights." *Ayer v. General Dynamics Corp.*, 128 Ariz. 324, 326, 625 P.2d 913,

915 (App.1980). Here, the victim has a statutory right to receive restitution—but only from a juvenile who is adjudicated delinquent for the offense that punishes the conduct that directly caused the victim's damages. As we state above, the record contains no evidence that E.G.'s act of accepting a ride in the victim's stolen car directly caused any of the victim's damages.

Finally, the state argues that we should uphold the restitution order because the order serves the rehabilitative purpose of the restitution statute. We are not persuaded. In order for restitution to serve any rehabilitative purpose in making the defendant accept responsibility, the restitution order must be directly related to the crime the defendant has committed. *People v. Richards*, 17 Cal.3d 614, 131 Cal.Rptr. 537, 542, 552 P.2d 97, 102 (1976). "No rehabilitative purpose can be served by forcing a person to confront tendencies which differ from those which induced his crime." *Id.* If the state wishes to use restitution for rehabilitation, it must first establish a direct causal relationship between the victim's loss and the particular conduct punished by the offense for which the juvenile was adjudicated delinquent.

## CONCLUSION

We conclude that the juvenile court erred by ordering E.G. to pay restitution. For the foregoing reasons, we vacate the restitution order of the juvenile court.

NOYES, J., concurs.

EHRLICH, Judge, concurring.

I concur in the result affirming the adjudication of delinquency and vacating the juvenile court's order of restitution. I believe, however, contrary to the majority at page 4, *supra*, that Arizona Revised Statutes Annotated section 8–241(C)(1) does define the limits of restitution in a delinquency matter, at least in this case where there is no contrary agreement between the state and the juvenile with regard to related but uncharged offenses. The express language of the statute, that the court shall order the delinquent child to "make full or partial restitution to the victim of the offense for which the child

was adjudicated delinquent," contemplates for imposition of reimbursement a causal connection between the offense for which the juvenile was declared to be an offender and the victim's loss. Here, the state conceded that it could prove no causal connection between the criminal trespass, the offense for which E.G. was adjudicated delinquent, and the victim's economic loss from the theft of personal property and vehicle damage. On this rationale, I join the majority's disposition.