212 P.3d 830 (2009)
In re BRENDAN G.
No. 1 CA-JV-08-0081.
Court of Appeals of Arizona, Division 1, Department A.
April 2, 2009.
*831 James Haas, Maricopa County Public Defender by Eleanor Terpstra, Deputy Public Defender, Phoenix, Attorneys for Appellant.
Andrew P. Thomas, Maricopa County Attorney by Diane Gunnels Rowley, Assistant County Attorney, Phoenix, Attorneys for Appellee.

OPINION
DOWNIE, Judge.
¶ 1 Brendan G. ("Brendan") was found delinquent of misdemeanor assault. On appeal, he challenges that portion of the juvenile court's restitution order that requires him to reimburse the victim for interest and fees *832 incurred on a credit account used to pay for dental treatment necessitated by the assault. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL BACKGROUND
¶ 2 On April 16, 2007, Brendan assaulted classmate J.P. ("Victim") at school. Victim's head and lips were severely swollen, his front tooth was knocked loose, and his bottom teeth were damaged. The nerve in Victim's front tooth died, requiring a root canal and crown. His bottom teeth required bonding. Victim's family incurred $5882 in medical and dental expenses as a result of the assault.
¶ 3 Brendan entered into a plea agreement whereby he admitted assaulting Victim in violation of Arizona Revised Statutes ("A.R.S.") section 13-1203(A)(1). At the disposition hearing, the juvenile court placed Brendan on standard probation. Because Victim had moved to Colorado, the court set a restitution hearing for a later date.
¶ 4 At the restitution hearing on February 25, 2008, the parties agreed Brendan was liable for Victim's medical and dental expenses in the sum of $5882. The court ordered Brendan to pay this amount. Victim's mother also requested reimbursement for interest charges and fees she incurred on a CareCredit® account[1] that she opened through the dental providers as a means of paying for J.P.'s treatment. The juvenile court continued the restitution hearing to consider this issue.
¶ 5 On April 10, 2008, the restitution hearing reconvened. Victim's mother testified that she incurred CareCredit interest and fees totaling $1006.19 on a principal balance of $3527.[2] Only some of J.P.'s dental expenses were charged to this account, which carried a credit limit of $3500. The account featured a 90-day interest-free introductory period. Had Victim's family paid the entire balance during that introductory period, no interest would have accrued. However, at the end of the 90-day period, the family had paid only $235roughly the minimum amount due for that time period. Thus, interest was assessed both retroactively and prospectively. The account was also charged fees for: (1) payments made by phone; (2) exceeding the credit limit;[3] and (3) late payments. The interest rate ultimately rose to 27.99% APR based on the account's payment history. Victim's mother testified about unexpected financial reversals the family experienced after her son was assaulted, and the record reflects that the family made good faith efforts to pay the account within its limited means.[4]
¶ 6 At the conclusion of the restitution hearing, the juvenile court entered the following order:
THE COURT FINDS that the victim has sustained a monetary loss of $1,006.19 in addition to the restitution previously ordered on 02/26/2008 in the amount of $5,882.00 for a total of $6,888.19 as the result of the actions for which the juvenile was adjudicated delinquent.
¶ 7 Brendan timely appealed, arguing that the court erred in imposing the additional $1,006.19 in restitution. We have jurisdiction pursuant to A.R.S. § 8-235(A). See also In re Kevin A., 201 Ariz. 161, 163, ¶ 6, 32 P.3d 1088, 1090 (App.2001) (restitution order constitutes final order for appeal purposes).

DISCUSSION
¶ 8 We typically review a trial court's restitution order for an abuse of discretion. In re William L., 211 Ariz. 236, 239, ¶ 10, 119 P.3d 1039, 1042 (App.2005). However, in exercising its discretion, a trial court *833 may not misapply the law or a legal principle. Maricopa County Juv. Action No. JV-128676, 177 Ariz. 352, 353, 868 P.2d 365, 366 (App.1994). Whether a court may include credit card interest and fees in a restitution award is a question of law that we review de novo by interpreting statutes and applying common law principles regarding restitution.
¶ 9 Victims have the right to prompt restitution for losses they incur as a result of a crime.[5] Ariz. Const, art. 2, § 2.1(A)(8). A juvenile offender is required to make "full or partial restitution to the victim of the offense for which the juvenile was adjudicated delinquent...." A.R.S. § 8-344(A). "[W]e look to the restitution statutes and case law employed in the adult criminal prosecution context for guidance in determining whether restitution should be awarded in [a] juvenile matter." No. JV-128676, 177 Ariz. at 353, 868 P.2d at 366.
¶ 10 "Arizona's statutory scheme requiring restitution in criminal cases is based on the principle that the offender should make reparations to the victim by restoring the victim to his economic status quo that existed before the crime occurred." William L., 211 Ariz. at 239, ¶ 11, 119 P.3d at 1042. Pursuant to A.R.S. § 13-603(C) (2001), courts must award restitution "in the full amount of the [victim's] economic loss ...." A.R.S. § 13-105(16) defines "economic loss" as follows:
"Economic loss" means any loss incurred by a person as a result of the commission of an offense. Economic loss includes lost interest, lost earnings and other losses that would not have been incurred but for the offense. Economic loss does not include losses incurred by the convicted person, damages for pain and suffering, punitive damages or consequential damages.

A.R.S. § 13-105(16) (Supp.2008) (emphasis added).
¶ 11 In State v. Wilkinson, 202 Ariz. 27, 39 P.3d 1131 (2002), our supreme court enunciated a three-part test for determining when a loss is compensable via a restitution award: (1) the loss must be economic; (2) the loss must be one that the victim would not have incurred but for the criminal offense; and (3) the criminal conduct must directly cause the economic loss i.e., the damages must not be consequential. Id. at 29, ¶ 7, 39 P.3d at 1133. If a loss does not flow directly from the defendant's criminal activity, it is considered a non-recoverable consequential damage. Id. This same test applies in juvenile delinquency cases. In re Andrew C., 215 Ariz. 366, 368, ¶ 9, 160 P.3d 687, 689 (App.2007); In re Stephanie B., 204 Ariz. 466, 469, ¶ 10, 65 P.3d 114, 117 (App.2003).
¶ 12 The dispute here focuses on application of the third Wilkinson prong: whether Brendan's assault directly caused Victim to incur interest and fees on the Care-Credit account. Brendan argues that such damages are consequential, not direct, and therefore should not have been included in the restitution order.[6] The State, on the other hand, contends that it was reasonably foreseeable that Victim's family would be forced to charge the dental expenses and incur associated fees and interest.
¶ 13 The foreseeability test urged by the State has been supplanted by Wilkinson and its progeny. Even before Wilkinson, the foreseeability standard had fallen into disfavor. See, e.g., State v. Lindsley, 191 Ariz. 195, 198, 953 P.2d 1248, 1251 (App.1997) ("Although we previously said if a loss is a `foreseeable' loss it is not merely a consequential loss ... the proper focus is upon how directly the loss flows from the defendant's acts."). In any event, the record does not support the foreseeability argument. The State makes unsupported assumptions in this regard, arguing that, "because the juvenile and the victim were formerly good friends, the juvenile *834 probably had some actual knowledge of the victim's family's financial situation." (Emphasis added.) Even assuming arguendo that high school-aged Brendan knew of J.P.'s family's finances, nothing reflects that he could or should have anticipated the financial straits the family experienced after the assault. Victim's mother testified that their finances deteriorated unexpectedly due to a tenant who defaulted on a lease, a family move to Colorado, and the unanticipated need to pay two mortgages.
¶ 14 Consequential damages "are those that `are not produced without the concurrence of some other event attributable to the same origin or cause; such damage, loss, or injury as does not flow directly and immediately from the act of the party, but only from the consequences or results of such act.'" William L., 211 Ariz. at 240 n. 4, ¶ 14, 119 P.3d at 1043 n. 4. Recognized examples of consequential damages include a company's loss of lease profits from the conversion of its property, State v. Pearce, 156 Ariz. 287, 289-90, 751 P.2d 603, 605-06 (App.1988); post-judgment interest on awards of restitution, State v. Foy, 176 Ariz. 166, 170-71, 859 P.2d 789, 793-94 (App.1993); expenses incurred by victims in completing or repairing work performed by unlicensed contractors, Wilkinson, 202 Ariz. at 29, ¶ 10, 39 P.3d at 1133; and attorneys' fees incurred by a deceased victim's spouse in connection with prosecution of a motorist for negligent homicide, State v. Slover, 204 P.3d 1088, 1091, ¶ 8 (App.2009).
¶ 15 Although Foy pre-dates Wilkinson, its explanation of the rationale for excepting consequential damages from restitution awards remains accurate:
Our legislature has narrowed the definition of "economic loss," as that term is used in reference to restitution, in A.R.S. section 13-603(C). The definitional parameters selected by the legislature demonstrate an intelligent choice between competing interests. If the phrase "full amount of the economic loss" were defined broadly to permit the recovery of unliquidated damages, i.e. pain and suffering, punitive damages, decreased earning capacity, loss of consortium and the like, the criminal trial courts would be forced to make difficult and time-consuming evaluations of losses usually reserved for civil juries. Our courts have repeatedly recognized that the goals of restitution in a criminal case differ from damages imposed in a civil action.
176 Ariz. at 170, 859 P.2d at 793.
¶ 16 In the case at bar, the fees and interest are liquidated amounts. Additionally, this is not a situation where a victim intentionally or even negligently caused her damages to increase. Faced with unexpected and pressing dental needs, J.P.'s family took reasonable steps to obtain treatment and to pay for it with credit obtained through the dentist's office.
¶ 17 In different circumstances, where a victim fails to reasonably mitigate damages, a trial court has broad discretion to limit restitution to those amounts reasonably incurred as a direct result of the criminal conduct. See, e.g., Lindsley, 191 Ariz. at 197, 953 P.2d at 1250 (trial court has discretion to set restitution amount according to facts of the case in order to make the victim whole). Here, Victim's mother testified regarding the family's good faith efforts to pay its bills and thereby mitigate damages. Brendan presented no contrary evidence. The juvenile court found that the credit charges were reasonably and necessarily incurred to obtain treatment for J.P.[7] Moreover, this is not a case where it is difficult to determine what portion of the credit debt is attributable to Victim's dental expenses. The CareCredit account was used exclusively for J.P.'s dental care. Finally, we are not dealing with reimbursement for collateral financial losses. For example, had Victim's mother claimed that, due to the unanticipated expenses associated with the assault, she had to juggle or *835 ignore other financial obligations (e.g., utilities, mortgage, unrelated credit debt), thereby incurring late fees, returned check charges, penalties, and the like on those accounts, the court would have been faced with a closer call vis-a-vis the prohibition against consequential damages.
¶ 18 As to the CreditCare account, we hold that the interest and fees constitute an economic loss within the meaning of A.R.S. § 13-105(16). Our conclusion is consistent with the principle that juvenile offenders "should make reparations ... by restoring the victim to his economic status quo that existed before the crime occurred." William L., 211 Ariz. at 239, ¶ 11, 119 P.3d at 1042. Reversing the restitution order would place this victim in a substantially worse financial position than before the assault.[8] Nor does our decision result in a prohibited windfall to the victim. See, e.g., State v. Freeman, 174 Ariz. 303, 306, 848 P.2d 882, 885 (App.1993) (payments beyond those required to compensate a victim or payments that would constitute a windfall should be avoided). Our determination is also consistent with A.R.S. § 8-417, which addresses victims' rights in juvenile cases and states: "This article shall be liberally construed to preserve and protect the rights to which victims are entitled." Finally, a contrary holding would penalize uninsured and financially strapped victims who, through no fault of their own, cannot independently absorb the financial consequences imposed on them by another's criminal conduct. The juvenile court recognized this reality when addressing Brendan at the restitution hearing, stating:
Now, it would have certainly have [sic] been a lot more convenient if you had selected a victim who was more financially well off, but one of the doctrines in a different area is you take your victim as you find your victim, and if your actions cause more damage than they would have done to another victim, you are responsible for the damage you do to the victim you damaged.
¶ 19 We agree that those who commit crimes must generally take their victims as they find them and may not complain that a person suffered more injury or economic loss than a differently situated victim would have. See State v. Cotton, 197 Ariz. 584, 590, ¶ 23, 5 P.3d 918, 924 (App.2000) ("a perpetrator of illegal conduct takes his victims as he finds them ....") (quoting People v. Hall, 158 A.D.2d 69, 79, 557 N.Y.S.2d 879, 885 (1990)).

CONCLUSION
¶ 20 For the reasons stated above, we affirm the juvenile court's restitution order in its entirety.
CONCURRING: MICHAEL J. BROWN, Presiding Judge and DANIEL A. BARKER, Judge.
NOTES
[1] CareCredit is a patient financing program available through participating health care providers. See CareCredit Healthcare Finance, http://www.carecredit.com/index.html (last visited Mar. 24, 2009).
[2] Victim's mother testified about the interest and fees at both the February 25, 2008, and April 10, 2008, restitution hearings. Our discussion encompasses her testimony from both proceedings.
[3] The credit limit was exceeded by $27 at the outset, when dental expenses totaling $3527 were charged. Thereafter, interest and fees significantly increased the balance over the stated limit.
[4] For example, the family initially paid at least the minimum balance due on the account in a timely fashion.
[5] Victim's mother may recover restitution for expenses she incurred in obtaining necessary care for her son. See In re Erika V., 194 Ariz. 399, 401, ¶¶ 5.0.0.1, 7, 983 P.2d 768, 770 (App. 1999) ("parents are legally required to provide [juveniles] with necessary medical treatment" and may be awarded restitution where they "stand[] in the shoes of the victim because [they are] legally required to suffer the victim's own precise loss").
[6] Alternatively, Brendan asks us to reduce the interest rate to a "more reasonable" level of 10% per annum.
[7] During the restitution hearing, the trial court remarked:

Now as far as the interest is concerned, that's somewhat problematical, and that's a pretty high rate. But the problem is, he was injured, [J.P.] was injured, and he and his mother had to do something about the injuries. And unfortunately they didn't have cash on hand to take out of the bank to pay for it. The only thing they could do was to put it on a credit card, and that's how much they were paying, and so that's what they're out of pocket.
[8] Even the contested order fails to make the victim whole, as the amount of restitution is now fixed, while the account fees and interest continue to mount.