# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

<table>
<tr><td>STATE OF WASHINGTON,<br><br>              Respondent,<br><br>      v.<br><br>JUAN CRUZ-GRIJALVA, aka JUAN<br>ALEXANDER CRUZ,<br><br>              Appellant.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>No. 70419-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: January 20, 2015</td></tr>
</table>

APPELWICK, J. — Cruz-Grijalva appeals his conviction for robbery. He contends that the trial court abused its discretion in denying his motions for new counsel and erred in admitting statements he made to police before and after his arrest. We affirm.

## FACTS

On the evening of January 6, 2012, Linda Geer called 911 to report being robbed by a young Hispanic man wearing a light green hooded jacket and a dark New York baseball cap. The man threatened her with a knife and demanded her iPhone. Shortly thereafter, Seattle Police Officer Scott Luckie saw a man matching Geer's description of the robber near the scene of the crime. Officer Luckie told the man, Juan Cruz-Grijalva, to come to the front of his patrol car, where he conducted a frisk for weapons. Officer Luckie left Cruz-Grijalva with other officers and searched along the sidewalk and nearby yards, where he found a New York Yankees baseball cap and black knit gloves. Officer Luckie returned to his patrol car and arrested Cruz-Grijalva and put him in handcuffs.

Another officer arrived with Geer, who identified Cruz-Grijalva as the man who robbed her.

The State charged Cruz-Grijalva with first degree robbery while armed with a deadly weapon. Prior to trial, Cruz-Grijalva twice requested new counsel. At a hearing on November 21, 2012, Cruz-Grijalva claimed counsel was "not doing what he needs to do to prove my innocence. And I refuse to talk to him about my case, and . . . we have a conflict of interest." Cruz-Grijalva complained that counsel "goes against" all his choices; tried to "force [him] to take a deal"; did not visit him or answer his calls; and only asked for continuances. He wanted an attorney "that will actually show that he's, you know, really trying for me." The trial court denied his request.

On the first day of trial, March 18, 2013, Cruz-Grijalva again requested a new attorney, claiming that counsel would not explain his trial strategy and "actually withheld some evidence from" him. Cruz-Grijalva also stated, "[I]f you guys don't want to give me a new public defender . . . at least can I have some time to get a paid attorney?" He also insisted that his attorney did not tell him that any previous continuance had been granted to allow him to obtain private counsel and indicated that his sister was helping him so he could obtain private counsel within one week. The trial court denied his motion for new counsel or a continuance.

At a CrR 3.5 hearing, Officer Luckie testified that he did not recall whether Cruz-Grijalva made any statements when he initially detained him and frisked him for weapons. When he returned from searching the area, Officer Luckie

2

placed Cruz-Grijalva in handcuffs and advised him of his <u>Miranda</u> rights. <u>See</u> <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Officer Luckie testified that Cruz-Grijalva indicated that he understood his rights. In response to the officer's questions, Cruz-Grijalva offered various descriptions of his destination and his routes. When asked why he had "ditched his hat," Cruz-Grijalva claimed he was afraid the police would believe it was stolen because someone had accused him of stealing it.

Officer Erin Nicholson testified that she stood with Cruz-Grijalva at the patrol car before his arrest and asked him where he had been before being detained by Officer Luckie. Cruz-Grijalva said he had been to Safeway after getting off the bus. After informing Cruz-Grijalva that the officers had stopped him because he fit the description of someone for whom they were searching, Officer Nicholson joined Officer Luckie in searching the area

The State argued that Cruz-Grijalva's statements to both officers were admissible, because he was not under arrest when he answered Officer Nicholson's questions and he had been advised of his <u>Miranda</u> rights when he answered Officer Luckie's questions. Cruz-Grijalva argued that Officer Nicholson's questions constituted an improper custodial interrogation and that Officer Luckie failed to properly determine whether he intended to waive his rights before questioning him. The trial court determined that Cruz-Grijalva's statements were admissible because he was detained but not in custody when he spoke to Officer Nicholson, Officer Luckie properly advised him of his <u>Miranda</u> rights before questioning him, and he validly waived his rights.

Following trial, the jury found Cruz-Grijalva guilty as charged. The trial court imposed a standard range sentence.

Cruz-Grijalva appeals.

## DISCUSSION

Cruz-Grijalva first contends the trial court erred by denying his motion for a new attorney in November 2012 and again on the first day of trial, March 18, 2013.

Although criminal defendants are guaranteed the right to representation by counsel under the constitution, they are not guaranteed to representation by particular counsel of their choosing. State v. Stenson, 132 Wn.2d 668, 733, 940 P.2d 1239 (1997). The decision of whether a defendant's dissatisfaction with his counsel is meritorious and justifies the appointment of new counsel is an issue within the discretion of the trial court. Id. The Stenson Court elaborated:

> A criminal defendant who is dissatisfied with appointed counsel must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant. Attorney-client conflicts justify the grant of a substitution motion only when counsel and defendant are so at odds as to prevent presentation of an adequate defense. The general loss of confidence or trust alone is not sufficient to substitute new counsel.
>
> Factors to be considered in a decision to grant or deny a motion to substitute counsel are (1) the reasons given for the dissatisfaction, (2) the court's own evaluation of counsel, and (3) the effect of any substitution upon the scheduled proceedings.

Id. at 734 (internal citations omitted).

4

In reviewing a denial of a request for new counsel, we consider (1) the extent of the conflict between the defendant and counsel, (2) the adequacy of the trial court's inquiry, and (3) the timeliness of the motion. State v. Harris, 181 Wn. App. 969, 977, 327 P.3d 1276 (2014).

Cruz-Grijalva contends that the trial court abused its discretion by failing to adequately inquire into the reasons for his conflict with counsel. He complains that the first judge asked "only two open-ended questions," and the second judge questioned him only regarding his previous request and "simply listened to [his] concerns." But, the first judge asked Cruz-Grijalva to describe the conflict of interest and then asked whether "something in particular" was "going wrong between" him and counsel. And, the judge asked defense counsel and the prosecutor to comment on Cruz-Grijalva's complaints and the preparation of the case. The second judge asked Cruz-Grijalva, defense counsel, and the prosecutor about previous requests, and then allowed Cruz-Grijalva to state the reasons for his request at length on the record. Because each judge allowed Cruz-Grijalva and counsel to fully express any concerns, Cruz-Grijalva fails to establish that the inquiry was inadequate. State v. Schaller, 143 Wn. App. 258, 271, 177 P.3d 1139 (2007) ("[A] trial court conducts adequate inquiry by allowing the defendant and counsel to express their concerns fully," and "[f]ormal inquiry is not always essential where the defendant otherwise states his reasons for dissatisfaction on the record.").

Similarly, Cruz-Grijalva fails to demonstrate a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication requiring

5

substitution of counsel. At the November 2012 hearing, Cruz-Grijalva indicated a general loss of confidence and trust, insufficient opportunities for communication, and dissatisfaction with counsel's preparation of the defense case. Given the trial court's determination that "everything is getting ready for trial" in the manner expected, Cruz-Grijalva's allegations, even if supported, would not necessitate the substitution of counsel. State v. Varga, 151 Wn.2d 179, 200-01, 86 P.3d 139 (2004) (defendant's general dissatisfaction and distrust insufficient to warrant substitution of counsel).

At the March 18, 2013 hearing, Cruz-Grijalva complained that his attorney failed to "explain to me our strategy we're going to take during trial," despite his desire "to come prepared and understand what's going on." He added that when he received his "discovery last month," he "found out that" his attorney "actually withheld some evidence" and "didn't really explain to me all the stuff that they had against me, or like what could help me out." But, vague allegations suggesting a general lack of accord regarding trial preparation and strategy do not establish a complete collapse of communication between counsel and client. See State v. Cross, 156 Wn.2d 580, 606-09, 132 P.3d 80 (2006) (strategic disagreement between counsel and client regarding use of mental health defense did not demonstrate legally cognizable conflict requiring new counsel).

Under these circumstances, Cruz-Grijalva fails to demonstrate abuse of discretion in the trial court's denial of his motion for new counsel at either the November 2012 or the March 2013 hearing.

Cruz-Grijalva next contends the trial court violated his Fifth Amendment rights by admitting statements he made to Officer Nicholson and Officer Luckie.

We review the trial court's decision following a CrR 3.5 hearing to determine whether substantial evidence supports the findings of fact. State v. Broadaway, 133 Wn.2d 118, 130-31, 942 P.2d 363 (1997). Unchallenged findings of fact are verities on appeal. State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). The trial court's determination as to whether questioning constituted custodial interrogation is a conclusion of law that we review de novo. State v. Lorenz, 152 Wn.2d 22, 36, 93 P.3d 133 (2004).

Miranda warnings are required prior to the initiation of "custodial interrogation." State v. Heritage, 152 Wn.2d 210, 214, 95 P.3d 345 (2004). The test for determining whether a defendant is in custody for purposes of Miranda is an objective one: "whether a reasonable person in the individual's position would believe he or she was in police custody to a degree associated with formal arrest." Lorenz, 152 Wn.2d at 36-37.

Consistent with the Fourth Amendment and article I, section 7 of the Washington Constitution, a police officer may conduct a brief investigatory detention if the officer has a reasonable and articulable suspicion that an individual is involved in criminal activity. State v. Sieler, 95 Wn.2d 43, 46, 621 P.2d 1272 (1980); see also Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). During the course of a Terry stop, the officer may ask a moderate number of questions "to confirm or dispel the officer's suspicions." Heritage, 152 Wn.2d at 218. Because Terry stops generally are brief and occur

7

in public, "they are 'substantially less police dominated' than the police interrogations contemplated by Miranda." Id. (internal quotation marks omitted) (quoting Berkemer v. McCarty, 468 U.S. 420, 439, 440, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984)). Consequently, a routine investigatory detention is not custodial for purposes of Miranda. Id.

Here, when Officer Luckie called Cruz-Grijalva over to his car, he knew that Cruz-Grijalva matched the description of the robber, was walking away from the general vicinity of the crime scene, and had removed his hat since Officer Luckie first passed by in his patrol car minutes earlier. These facts justified Officer Luckie's decision to briefly detain Cruz-Grijalva to determine whether he might have committed the robbery. After conducting a Terry frisk for weapons while Cruz-Grijalva had his hands on the hood of the patrol car,[1] Officer Luckie allowed him "to stand freely" in front of the car while the investigation continued. Cruz-Grijalva was not handcuffed and had not been told he was under arrest. Officer Luckie obtained Cruz-Grijalva's identification and knew that he was under 18 years old.

As Officer Luckie finished the frisk and began to search the area, Officer Nicholson arrived and briefly asked Cruz-Grijalva about where he had been before being stopped by Officer Luckie. After Cruz-Grijalva answered this single question, Officer Nicholson told him he was being detained for the robbery investigation, but she did not tell him he was under arrest. The officers searched

---

[1] Cruz-Grijalva does not contend that the frisk exceeded the permissible scope of an investigatory detention. See State v. Day, 161 Wn.2d 889, 895, 168 P.3d 1265 (2007).

8

the area for 5 to 10 minutes. The trial court found that during that time, Cruz-Grijalva "was not free to leave, but was allowed to remain standing in front of Officer Luckie's patrol car" with other officers nearby. When Officer Luckie returned, he placed Cruz-Grijalva in handcuffs, informed him he was under arrest, and advised him of his Miranda rights.

Cruz-Grijalva argues that the trial court failed to consider his age and to determine whether a reasonable juvenile in his position would have felt free to leave at the time Officer Nicholson asked her single question. But, when a police officer questions a suspect during a valid investigatory detention, the fact that the suspect is not necessarily free to leave does not elevate the encounter into a custodial interrogation. See Berkemer, 468 U.S. at 439-40 (Fourth Amendment seizure of suspect for routine Terry stop does not rise to the level of "custody" for purposes of Miranda); Heritage, 152 Wn.2d at 218; State v. Walton, 67 Wn. App. 127, 130, 834 P.2d 624 (1992). The relevant question is whether a reasonable person in Cruz-Grijalva's position would have believed his freedom was curtailed to a degree associated with arrest at the time officers questioned him. Heritage, 152 Wn.2d at 218.

The trial court's unchallenged findings are that police (1) did not handcuff Cruz-Grijalva, (2) did not tell him he was under arrest, (3) allowed him to stand freely near the patrol car while they searched the area, and (4) asked him just one brief question regarding his activity before the stop. These findings support the conclusion that he was detained but that his freedom of movement had not been curtailed to a degree associated with formal arrest. Cruz-Grijalva fails to

demonstrate how his youth would "ultimately modify this otherwise noncustodial encounter into a custodial one." Heritage, 152 Wn.2d at 219. Given the circumstances described in the unchallenged factual findings, the trial court did not err in concluding that Cruz-Grijalva was not in custody for purposes of Miranda and admitting his statements to Officer Nicholson.

As to his statements to Officer Luckie after he was advised of his Miranda rights, Cruz-Grijalva contends the State failed to prove that he voluntarily waived his rights. Cruz-Grijalva does not dispute the trial court's findings that Officer Luckie (1) read the statement of rights to him, (2) "properly included the extra juvenile warning," and (3) asked him whether he understood his rights. He also does not dispute the finding that he orally indicated to Officer Luckie that he understood his rights. Instead, Cruz-Grijalva argues that Officer Luckie failed to do anything to additionally confirm that he actually understood his rights or specifically ask whether he wanted to waive his rights before beginning to question him.

Whether a juvenile has effectively waived his Miranda rights depends on the totality of the circumstances, including the juvenile's age, experience, background, intelligence, and his capacity to effect a voluntary waiver. State v. Blair, 56 Wn. App. 209, 212, 783 P.2d 102 (1989). Waiver of Miranda rights may be inferred when a juvenile indicates an understanding of his rights and voluntarily discusses the charged crime with police officers. See State v. Ellison, 36 Wn. App. 564, 571, 676 P.2d 531 (1984) (where juvenile acknowledged understanding rights, appeared to understand rights, and responded to questions

10

after initialing rights on card, waiver valid despite police failure to specifically ask for waiver or obtain signature on waiver form and despite evidence that juvenile had eleventh grade education, was in special education program, and had difficulties with reading and comprehension).

Here, the trial court found that Officer Luckie advised Cruz-Grijalva of his rights and asked him if he understood them. Cruz-Grijalva indicated that he understood his rights, "was neither hesitant nor reluctant to speak" with Officer Luckie but "willingly participated in" conversation with him, and eventually "declined . . . to provide any more information about this alleged incident." Nothing in the record indicates that Cruz-Grijalva's age, experience, education, background, intelligence, or capacity actually prevented him from waiving his rights. Thus, the trial court properly determined that Cruz-Grijalva voluntarily waived his rights and properly admitted his statements.

We affirm.

WE CONCUR:

11