830 P.2d 484

**In the MATTER of the Appeal in MARICOPA COUNTY JUVENILE ACTION NO. JV–503009.**

**No. 1 CA–JV 91–047.**

Court of Appeals of Arizona, Division One, Department D.

May 12, 1992.

Richard Romley, Maricopa County Atty. by Connie L. Smyer and Michael J. Goldstein, Deputy County Attys., Phoenix, for the State of Ariz.

Kessler & Doyle by Eric W. Kessler and Michael J. Doyle, Mesa, for juvenile.

## OPINION

TAYLOR, Presiding Judge.

The juvenile in this case was charged with two counts of theft, one count of unlawful use of means of transportation, and one count of shoplifting. Pursuant to a plea agreement, the juvenile pled guilty to unlawful use of means of transportation. In return, the State agreed to dismiss the remaining counts of theft and shoplifting. The State also agreed to cap restitution at $750.00 for all victims. Subsequently, the juvenile court entered the following restitution order:

> The issue of restitution having been under advisement, the Court having reviewed the Verified Victim Statement filed herein, and having considered the age, employment history, earning capacity of the child, and the arguments of counsel,
>
> IT IS ORDERED that the juvenile pay restitution relative to the petition of April 30, 1991, through the Clerk of the Superior Court, Juvenile Division, P.O. Box 29344, Phoenix, AZ 85038 in the total of *$500.00* plus the time payment assessment fee of $8.00 in regular payments of *$50.00* each beginning on *January 1, 1993*, and on the *1st day* of each month thereafter until paid in full for the benefit of the victims, Charles L. and Richard L. Maltby.

■ On appeal, the juvenile first contends that the juvenile court failed to consider the nature of the offense and the physical and mental condition of the juvenile as required by Ariz.Rev.Stat.Ann. ("A.R.S.") § 8–241(C). We disagree.

At the adjudication hearing, the juvenile admitted the offense, giving the court considerable detail of his involvement. The hearing also included a substantial discussion of the juvenile's psychological needs. It is apparent from the proceeding transcript that the juvenile and his problems were no stranger to the court.

At the disposition hearing, the judge, after considering the comments of counsel and others present, the probation officer's report, and the psychological evaluation of Dr. Cabanski, placed the juvenile on probation until age eighteen. At this hearing, counsel reviewed the evidence of the juvenile's ability to pay as well as his emotional maturity. The eleven-page probation report summarized the nature and details of the offense admitted by the juvenile and his physical and mental condition. Dr. Cabanski, a clinical psychologist, submitted a ten-page report consisting of numerous psychological and personality test results, together with his impressions and recommendations. The report suggested "a fairly bright, but severely emotionally handicapped and learning disabled youth...."

Based upon the information before it, the court placed the juvenile on probation and in the custody of the San Pablo Treatment Center. The court stated "that the expected benefits of [the juvenile's] placement would be intensive counseling in a structured setting, behavior modification, so that he can avoid delinquent behavior in the future, and education services." The matter of restitution was taken under advisement. While the juvenile court failed to specifically set forth in the subsequent restitution order its consideration of the nature of the offense and the physical and mental condition of the juvenile, it is clear from the record that these factors were in the mind of the juvenile judge.

■ The juvenile also argues that the juvenile court abused its discretion by ordering the juvenile to pay restitution when he did not have the means to pay. In the disposition report filed with the court, the probation officer stated: "Considering that the juvenile is 13 years of age, it is my opinion that he does not have the means to provide restitution to the victims. Therefore, I believe the victims should seek civil means through the juvenile's mother if they request restitution." Dr. Haynes, who performed a psychological evaluation of the juvenile, reported that the juvenile "lacks the skills necessary to cope with daily life." The juvenile contends that

these statements were the only evidence related to the juvenile's work history and earning capacity and that therefore the court had no evidence upon which to base its restitution order.

Under A.R.S. § 8–241, the juvenile court has discretion in determining the disposition of a juvenile following an adjudication of delinquency. Absent a clear abuse of that discretion, an appellate court will not disturb a juvenile court's disposition of a delinquent juvenile. *In re Appeal in Maricopa County Juvenile Action No. JV–110720*, 156 Ariz. 430, 431, 752 P.2d 519, 520 (App.1988).

After considering the specified criteria, a juvenile court is statutorily obligated to order a juvenile who has been adjudicated delinquent to pay either full or partial restitution to the victim of the offense. *See* A.R.S. § 8–241(C)(1); *see also In re Appeal in Maricopa County Juvenile Action No. JV–110720*, 156 Ariz. at 433, 752 P.2d at 522 ("The [restitution] award may be small in consideration of 'the nature of the offense and the age, physical and mental condition and earning capacity of the child,' but the statute requires that some restitution be awarded.").[1] Ordering a juvenile to pay restitution is consistent with the rehabilitative objective of juvenile dispositions. *See In re Appeal in Maricopa County Juvenile Action No. J–92130*, 139 Ariz. 170, 173, 677 P.2d 943, 946 (App.1984). The rehabilitative objective of ordering an adult offender to pay restitution is to force him to recognize that he is responsible for the consequences that flow from his criminal actions. *See State v. Merrill*, 136 Ariz. 300, 302, 665 P.2d 1022, 1024 (App.1983). We perceive a similar purpose in imposing some restitution upon a delinquent juvenile. "A condition of probation which does not violate basic fundamental rights and bears a relationship to the purpose of probation will not be disturbed on appeal." *In re Appeal in Pima County Juvenile Action No. J–20705–3*, 133 Ariz. 296, 298, 650 P.2d 1278, 1280 (App.1982).

The record shows that at the time of the disposition hearing, the juvenile was thirteen years old, had no work history, and suffered from some mental problems. The juvenile, however, was not ordered to begin making restitution payments until he was nearly fifteen years old. The court did not order the juvenile to pay restitution at a time when he was unable to pay. Rather, the court ordered payments to commence at a time when it was thought the juvenile would be able to pay. The court structured the restitution payments in a manner that allowed the juvenile to receive counseling to address his problems and that encouraged him to develop the means, abilities, and inclination to become a productive member of society. If, however, the juvenile finds that he still lacks the means or ability to pay the monthly restitution installments after the scheduled restitution payments begin, he may petition the court to modify the restitution order. At that time, the court can reduce or delete the requirement of restitution, reduce the amount of the monthly payment, or further delay payments. In short, the juvenile judge, with the juvenile before him and a record of the juvenile's progress since disposition, can address anew the ability of the juvenile to pay and can then enter such orders as are appropriate.

We believe the order delaying the payment of restitution shows that the juvenile court considered both the juvenile's employment history and earning capacity before ordering him to pay partial restitution. The information provided to the court by the probation officer as well as the psychological reports show the juvenile to have no significant physical health problems, to be capable of average performance in school, and to have as his major handicap emotional problems brought on by a highly dysfunctional family environment. The program of the court called for removing the juvenile from the home environment, treating his emotional needs, and then requiring

---

**1.** *Compare* A.R.S. § 13–603(C) (requiring convicted adults to make restitution for the *full* amount of the economic loss suffered by the victim); A.R.S. § 13–804(C) (prohibiting the tri-al court from considering an adult defendant's economic circumstances in determining the amount of restitution).

restitution. The record also shows that the victim sustained damages of approximately $3,513.00. The juvenile was ordered to pay only $500.00 in monthly installments of $50.00 commencing nearly one-and-one-half years later. We find no abuse of discretion in the juvenile court ordering the payment of some restitution at a future date.

A brief hypothetical excursion into the future will illustrate the appropriateness of the trial court's order. If restitution had not been ordered and if at some future date prior to his eighteenth birthday the juvenile clearly had the ability to pay toward restitution, the court would have two equally unappealing choices. It could ignore the rehabilitative value of restitution and the financial needs of the victims and do nothing. Alternatively, the court might impose restitution as a new condition and as an additional burden of probation. If the juvenile had done nothing to violate his probation but in fact had progressed favorably because of his diligent cooperation with his probation officer and counselors, the impo-

sition of restitution would constitute a dubious reward for his efforts as well as a dubious exercise of the court's power. "[B]efore a modification can impose a greater burden upon a probationer, there must be a finding that the individual violated the terms of probation." *Nieuwenhuis v. Kelly*, 164 Ariz. 603, 606, 795 P.2d 823, 826 (App.1990).

We conclude that the amount of restitution ordered by the juvenile court was neither improper nor an abuse of discretion. We have searched the record for fundamental error and have found none. Affirmed.

GERBER and EHRLICH, JJ., concur.