943 P.2d 842

**In re ERIC L.**

**No. 1 CA–JV 96–0108.**

Court of Appeals of Arizona,
Division 1, Department E.

April 17, 1997.

Review Denied Sept. 16, 1997.

**6. Infants ⚯224, 253**

Reversal of delinquency restitution order was required by trial court's erroneous belief that it had no power to adjust or reduce amount of restitution. A.R.S. § 8–241, subd. D.

---

Richard M. Romley, Maricopa County Attorney by Linda Alauria, Deputy County Attorney, Phoenix, for Appellee State of Arizona.

Dean W. Trebesch, Maricopa County Public Defender by Joel Martin Glynn and John W. Melvin, Deputy Public Defenders, Phoenix, for Juvenile.

## OPINION

WEISBERG, Judge.

Eric L. ("the juvenile") appeals the orders of the juvenile commissioner adjudicating him delinquent and ordering him to pay restitution to the victim. We affirm in part and reverse in part.

## FACTUAL AND PROCEDURAL HISTORY

On February 5, 1996, the state filed a delinquency petition against the juvenile alleging that he had committed two counts of burglary, two counts of theft, and one curfew violation. At the adjudication hearing, the juvenile agreed to admit to one count of attempted burglary and one count of theft. He also agreed to pay restitution to the victim in an amount to be determined by the court, not to exceed $1000. In exchange, the state agreed to drop the remaining charges.

The juvenile commissioner's minute entry reflects that the juvenile was advised of his constitutional rights and agreed to waive them. It also reflects that the juvenile wished to enter into the proposed agreement, that he admitted the factual basis for the crimes, and that his admission was not the result of any threats, coercion, or undue promises. Accordingly, the juvenile was adjudicated delinquent and a time was set for the disposition hearing.

At the disposition hearing, the juvenile was placed on probation in the physical custody of his mother and stepfather and the protective custody of a probation officer. Special term eleven of probation, regarding restitution, was to "remain open" pending a restitution hearing. At the restitution hearing, the commissioner ordered the juvenile to reimburse the victim for her economic losses caused by the theft.

The juvenile filed his notice of appeal and argues here that his plea was not voluntarily and intelligently entered because the commissioner failed to adequately inform him of his constitutional rights. He further argues that the commissioner abused her discretion in ordering restitution. In response, the state argues that the juvenile's notice of appeal was untimely as to the adjudication and disposition hearings, and therefore any issue related to the juvenile's admission must be dismissed. In the alternative, the state argues that the juvenile's admission was voluntarily and intelligently made and that the commissioner did not abuse her discretion in ordering restitution.

### I. Notice of Appeal

The commissioner entered the adjudication order on March 11, 1996. At the disposition hearing on April 25, 1996, the juvenile was placed on probation, but the restitution issue was continued. On May 28, 1996, the restitution order was entered. A notice of appeal from all three orders was filed on June 11, 1996. The state maintains that, while the notice of appeal was timely as to the restitution order, it was untimely as to the adjudication and disposition orders. We disagree.

A notice of appeal must be filed within 15 days after the final order of the juvenile court is filed by the clerk. Ariz. R.P. Juv. Ct. 25(a) ("Rule(s)"). In *In re Maricopa County Juvenile Action No. J–74222*, 20 Ariz.App. 570, 571, 514 P.2d 741, 742 (1973), this court held that the "final order" for purposes of Rule 25(a) is the disposition order because it is the "one that disposes of all issues ... before the Juvenile Court." Consequently, a notice of appeal filed 15 days after entry of the disposition order would be

484

timely as to both the adjudication order and the disposition order. *Id.* Furthermore, to avoid piecemeal appeals, the disposition order was held to be the *only* final order, rendering adjudication orders no longer separately appealable. *Id.*

Ten years after J–74222 was decided, the legislature amended the statute that is now designated Ariz.Rev.Stat. Ann. (A.R.S.) section 8–241(D).[1] *See* 1983 Ariz. Sess. Laws ch. 257, § 2. That amendment made the hitherto discretionary restitution order a mandatory part of a juvenile disposition. *See id.* (substituting "shall" for "may"); *In re Maricopa County Juvenile Action No. JV–503009,* 171 Ariz. 272, 274, 830 P.2d 484, 486 (App. 1992) ("After considering the specified criteria, a juvenile court is statutorily obligated to order a juvenile who has been adjudicated delinquent to pay either full or partial restitution to the victim of the offense."). The statute now reads, in relevant part:

D. The court shall, after considering the nature of the offense and the age, physical and mental condition and earning capacity of the child, order the following dispositions for a delinquent child, either as exclusive dispositions or in addition to the dispositions provided by subsection A, paragraph 2 of this section:

1. To make full or partial restitution to the victim of the offense for which the child was adjudicated delinquent.

A.R.S. § 8–241(D)(1). Thus, since the 1983 amendment, the order denominated "disposition" is necessarily interlocutory in nature when restitution remains an unresolved issue. The juvenile's disposition is therefore not final until restitution has been considered and ruled upon.

Consequently, applying the reasoning of *J–74222,* we hold that, when restitution remains at issue, the final order for purposes of Rule 25(a) is the restitution order. Until that order has been entered, no appeal may be taken. And, when the notice of appeal is filed, it encompasses all previous orders entered by the juvenile court. This practical result will reduce the number of documents required to be filed with the court, reduce the amount of counsel's paperwork, and avoid piecemeal appeals. *See J–74222,* 20 Ariz. App. at 571, 514 P.2d at 742.

We therefore conclude that the juvenile's notice of appeal was timely because it was filed within 15 days of the restitution order.

## II. Voluntary and Intelligent Admission

■ After the petition was filed against the juvenile, he signed an affidavit stating that he understood that he had the following rights: to remain silent, to be represented by counsel, to a hearing to determine his guilt or innocence, and to call witnesses on his own behalf and cross examine the witnesses against him. He also signed an "Invocation of Fifth and Sixth Amendment Rights," which gave notice that he was exercising his "Fifth Amendment right not to incriminate [him]self ... and all rights to which [he was] entitled under Article II, §§ 10 and 24 of the Arizona Constitution." When the juvenile admitted to two charges at the adjudication hearing, the following exchange took place between him and Commissioner Verdin:

Court: Eric, the attorneys are telling me that you wish to admit to some charges today. Is that true?

Juvenile: Yeh.

Court: If you admit today, there will not be a trial. Do you know what a trial is?

. . . .

Juvenile: Yes.

. . . .

Court: If you admit, you are giving up your right to a trial, but you're also giving up your right to remain silent. That means you have to tell me in your own words what it is you did wrong. Do you understand that?

Juvenile: Yes.

Court: Is that what you would like to do?

Juvenile: Yes.

---

1. A.R.S. section 8–241 was originally enacted in 1970. *See* 1970 Ariz. Sess. Laws ch. 223, § 2. Subsection (C), relating to payment of restitution, was added in 1979. *See* 1979 Ariz. Sess. Laws ch. 92, § 1. The subsection was redesignated as (D) in 1994. *See* 1994 Ariz. Sess. Laws ch. 201, § 8.

Court: If you admit today, there will be another hearing in the future called a Disposition Hearing. At a Disposition Hearing, you get a consequence for your inappropriate behavior. That consequence could include being placed on probation at home or outside of your home, but you could also be sent to the State Department of Juvenile Corrections until you turn 18. You could be detained here. You could be ordered to pay a fine. You could be ordered to do community service work. You could be ordered to go to drug testing, to counseling, or some other type of educational program. You might also be ordered to pay restitution. Restitution means paying someone back for damages that you may have done. Do you understand the things that could happen to you?

Juvenile: Yes.

Court: Has anybody threatened you in any way in order to make you admit?

Juvenile: No.

The juvenile then gave the commissioner a factual basis for his admissions and the commissioner found "that the juvenile has knowingly, intelligently, and voluntarily entered into an admission of Count I and Count II."

The juvenile now argues that his admissions were not voluntary and intelligent because the commissioner failed to properly advise him of his right to remain silent and his right to confront his accusers. We disagree.

■ In order that a juvenile's admission to a charge be voluntary and intelligent, he or she must be aware of the rights that are waived by entering into the admission. *In re Maricopa County Juvenile Action No. J-86715,* 122 Ariz. 300, 302–03, 594 P.2d 554, 556–57 (App.1979); *see also Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Those rights include:

1. The right against self-incrimination,

2. The right to confront one's accusers,

3. The right to a trial in the form of an adjudication hearing, and

4. The potential dispositions.

*J–86715,* 122 Ariz. at 303, 594 P.2d at 557. Furthermore, the record of the admission proceeding must affirmatively show that the juvenile was aware of these rights. Such awareness may not be presumed from a silent record. *Id.* at 302–03, 594 P.2d at 556–57. The "record," however, is not limited to the hearing transcripts. *State v. Darling,* 109 Ariz. 148, 152, 506 P.2d 1042, 1046 (1973). It includes the instruments filed with the trial court and the minute entries. *See id.*

In this case, the record is not silent. The juvenile signed an affidavit stating that he was aware of and understood his rights, including his rights to remain silent and to confront his accusers. Later, with the aid of counsel, he also signed a document invoking his Fifth Amendment right to remain silent and his rights under the Arizona Constitution, which include the right to remain silent and the right to confront witnesses.

Our supreme court has rejected the notion that an accused, in making his plea, must be deemed aware only of the rights about which the trial court has informed him:

> We take judicial notice that defendants know many things which are not told to them by the judge, and if the record will support a finding that the defendant did, in fact, know [his rights], we will not reverse merely because he did not hear it from the judge.

*Id.* We will not presume, as the juvenile asks us to, that he signed the documents informing him about and invoking his rights, yet remained uninformed about the extent of those rights or the effect of their waiver.

In addition, we ought to afford some deference to the commissioner's finding of voluntariness when it was she who personally spoke with and observed the juvenile while he was making the admission. *See State v. Reynolds,* 106 Ariz. 47, 50, 470 P.2d 454, 457 (1970). In such proceedings, our supreme court has acknowledged that there are only general guidelines and that the trial court's interrogation "must necessarily vary from case to case." *Id.* So long as the trial court is satisfied that a defendant's constitutional rights have been safeguarded and there is adequate basis in the record to support that finding, we will not disturb a trial court's acceptance of a plea. *Cf. id.*

Accordingly, based upon this record, we conclude that the juvenile was adequately informed of his rights and understood them at the time he entered his admission.

### III. Restitution

■ At the restitution hearing, Commissioner Bacher ordered the juvenile to pay a total of $654.10, which consisted of $434.10 for damages to the victim's car, $88.00 for her loss of one day of work while she waited for car repairs, $88.00 for her loss of another day of work while attending the adjudication hearing, and $44.00 for her loss of one half day of work while attending the disposition hearing.

Although the juvenile makes several arguments as to why the restitution award was improper, we need only address the first argument because it is dispositive. As reflected by the transcript of the restitution hearing, the commissioner seems to have been operating under the mistaken belief that she had no discretion to adjust or reduce the amount of restitution due the victim:

Court: [A]ll right. How old are you?

Juvenile: Thirteen.

Court: Thirteen? When will you be sixteen?

Stepfather: March of '99. He just turned 13 in March.

. . . .

Court: March 17 of '99. All right. (Indecipherable) the legislature enacted laws providing that we can order restitution at the current time (indecipherable) juvenile. The legislature, however, never explained to this court, nor do I imagine it could explain, how, uhm, the court can, since its powers are limited to ordering restitution from the juvenile, how this court can possibly make a 13–year–old pay this kind of money since a 13–year–old cannot be employed, uh, in most situations, and so the court is faced with [the] practical problem including, uh, I can order restitution but it's going to be really hard for me to, uhm, expect that the juvenile is going to pay it until such time if he were just 16. Now, Eric, here's the deal. You don't get off probation until you pay the money. Nor-

mally probation is a year. So, you need to either see if you can do some odd jobs for the neighbors and start working on paying this money off, or (indecipherable) remain on probation until you pay it off.

Juvenile: Okay.

Court: So that's the situation.

Stepfather: Your Honor, isn't that kind of unfair. Being on probation for three years and uh, I mean, (indecipherable) we could pay the money, but we just don't have it, it's not that we don't want to pay it and I mean I thought it was (indecipherable) the person last (indecipherable) that was the first time he ever got in trouble. You know?

Court: I don't make the rules.

Stepfather: Yeah.

Court: I just carry them out and, uhm, I am required to order, uh, restitution as appropriate, uhm, I'm not necessarily saying it's fair, but it's the law. Uhm, so now, he may be eligible for some JTPA Programs next year. There's a lot of summer programs, uhm, that employ kids in the 14 to 16 and do pay them, but whether he'd be eligible or not I don't know, so I can't order him to do that.

Stepfather: But, I don't want him missing, to fall (indecipherable) in high school and junior high, (indecipherable) in school you know, cuz . . .

Court: I understand that. But it's a practical matter. There's not much I can do.

While the restitution order is mandatory, *see* A.R.S. § 8–241(D), it may provide for *either* full or partial restitution, depending on the court's consideration of the juvenile's "age, physical and mental condition and earning capacity." *Id.* Thus, the commissioner's ability to deal with the "practical problem" of ordering a thirteen-year-old to pay full restitution was not as limited as she believed. *See In re Maricopa County Juvenile Action No. JV–503009*, 171 Ariz. 272, 274, 830 P.2d 484, 486 (App.1992) ("After considering the specified criteria, a juvenile court is statutorily obligated to order a juvenile who has been adjudicated delinquent to pay either full or partial restitution to the victim of the offense."). We therefore reverse the restitu-

**487**

tion order and remand for reconsideration based upon the factors set out in A.R.S. section 8–241(D).

## CONCLUSION

We affirm that the juvenile's notice of appeal was timely filed and that the juvenile was adequately advised of his constitutional rights. We reverse the restitution order and remand it for further consideration consistent with this opinion.

VOSS, J., concurs.

KLEINSCHMIDT, Judge, dissenting.

I concur with the majority except as to validity of the Juvenile's plea. I believe *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), requires that when a defendant enters a guilty plea he must be informed, *in open court*, of the constitutional rights he is waiving. As *Boykin* said, the court should use the "utmost solicitude of which courts are capable in canvassing the matter with the accused." *Boykin*, 395 U.S. at 243–44, 89 S.Ct. at 1712.[1] One of these *Boykin* rights is the right to confront the state's witnesses. In this case, the court neglected to advise the Juvenile that he had the right to confront his accusers and neglected to determine whether the Juvenile understood that right.

It is true that the Juvenile in this case signed an affidavit stating that he was aware of this right and that he understood it. It is also true that *State v. Darling*, 109 Ariz. 148, 506 P.2d 1042 (1973), allows a review of the whole record to determine whether a defendant understood all the rights he was waiving. Although the affidavit is evidence that the Juvenile understood his rights, it is not a complete substitute for the inquiry the court should have made. Signing a form affidavit does not ensure that a juvenile, who in reality may not have even read it, fully understands its contents. I would remand for a determination, *in open court*, of whether the

Juvenile understood that he was waiving the right to confront his accusers.

---

1. Rule 17.2(c), Arizona Rules of Criminal Procedure, specifically says that the inquiry shall be "in open court."