McMURDIE, Judge:
¶ 1 Petitioner John Doe seeks special action relief from a superior court order denying his motion to quash a subpoena served by Real Party in Interest U.S. American Resources, Inc. ("USAR") requiring Doe's identity to be disclosed because of alleged defamatory statements he made on an internet blog. We accept jurisdiction and grant relief, holding that under the controlling analysis set forth in Mobilisa, Inc. v. Doe , 217 Ariz. 103, 170 P.3d 712 (App. 2007), and considering the First Amendment's protection of anonymous and pseudonymous speech, USAR's claims would not survive a motion for summary judgment based on the six statements reviewed in the superior court's order.
FACTS AND PROCEDURAL BACKGROUND
¶ 2 USAR is a mining and exploration company founded by John Owen, who currently serves as its CEO. As part of its business, USAR seeks investors to develop various mining projects by promising them profits from those mining investments. From 2005 to 2007, USAR and its subsidiaries received cease and desist orders from Washington, California, and Maryland, based on its conduct in soliciting investments.
¶ 3 In September 2005, Washington's Department of Financial Institutions Securities Division issued a "Statement of Charges and Notice of Intent to Enter Order to Cease and Desist and to Impose Fines." The securities administrator that issued the statement found USAR "failed to provide material information regarding the investment, including ... the risks involved with gold mining." The statement further concluded that USAR "made misstatements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." USAR was fined $5000 as part of a consent order related to the statement of charges issued by the State of Washington.
¶ 4 In June 2006, California's Department of Corporations issued a "Desist and Refrain Order," which found USAR was offering securities "by means of written or oral communications which included an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statement made ... not misleading...." As part of the stipulation with the California Department of Corporations, USAR acknowledged, without admitting or denying fault, that the California Corporations Commissioner found USAR made three material omissions when soliciting potential investors regarding a mine in Arizona (the "Chastain" mine). The omissions listed in the stipulation included failing to tell potential investors that (1) USAR was promising more gold on its properties than had been recovered from the *1016 entire state of Arizona since the late 1800s; (2) at that time no gold mines were currently active in Arizona; and (3) no Bureau of Land Management ("BLM") mining plan had been approved and USAR was therefore not yet authorized to mine, despite claims that it was mining tons of ore a day.
¶ 5 In September 2007, the Securities Commissioner of Maryland issued to International Energy and Resources, Inc. ("IER"), a wholly owned subsidiary of USAR, a "Final Order to Cease and Desist." In the order, the commissioner found IER had made "materially false and misleading statements regarding the value of [investment] interests and the promised investor profits," and had omitted material facts, "including full representation of the risk associated with an investment in IER."
¶ 6 From May to December 2016, Doe made a series of posts on a blog hosted on InvestorsHub.com, a website that organizes online debates for investors regarding various companies and prospective investments. Doe's posts concerned the viability of USAR mining investments in Arizona and accused USAR of fraud. Doe is a moderator of the blog on which he posted, which is entitled "Mining Company Research Board" and is described as "a place to bring concerns and questions about penny stock mining companies and their mining claims or to just discuss the merits of individual penny stock mining companies and share/build research on those companies." Doe commented on the blog under the username "gitreal."
¶ 7 In January 2017, USAR filed a defamation complaint against Doe for his posts on the blog. Afterwards, USAR served a subpoena on Cox Communications, Inc., seeking Doe's IP address. Doe filed a motion to quash the subpoena, and after oral argument, the superior court denied the motion and ordered Doe's identity revealed. In its order, the superior court did not evaluate all the statements challenged by USAR, but instead focused on just six of the defamatory statements alleged by USAR. The court found that at least one of the statements, if proven true, could render USAR's claim of defamation capable of surviving summary judgment under the test set forth in Mobilisa . Doe filed this petition for special action seeking review of the superior court's ruling.
JURISDICTION AND STANDARD OF REVIEW
¶ 8 Special action jurisdiction is discretionary and appropriate when no "equally plain, speedy, and adequate remedy by appeal" exists. Ariz. R.P. Spec. Act. 1(a). An order denying a motion to quash is appropriate for special action review. Helge v. Druke , 136 Ariz. 434, 436, 666 P.2d 534, 536 (App. 1983). Furthermore, Doe does not have an adequate remedy by appeal because the challenged subpoena will reveal his identity unless this court grants relief. Thus, in the exercise of our discretion, we accept special action jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-120.21(A)(4) and Arizona Rule of Procedure for Special Action 1(a).
¶ 9 This court reviews rulings on discovery matters for abuse of discretion. Mobilisa , 217 Ariz. at 107, ¶ 9, 170 P.3d at 716. Whether the superior court applied the correct legal standard, including whether a cause of action could survive a motion for summary judgment, is a matter of law that we review de novo . See Ponce v. Parker Fire Dist. , 234 Ariz. 380, 382, ¶ 9, 322 P.3d 197, 199 (App. 2014).
DISCUSSION
¶ 10 Doe argues the superior court abused its discretion by denying his motion to quash and by improperly analyzing the controlling authority set forth in Mobilisa . Because none of the six statements analyzed by the superior court supports a claim that could survive a motion for summary judgment, the superior court erred by denying Doe's motion to quash.
¶ 11 The First Amendment to the United States Constitution protects the right to speak anonymously and to publish pseudonymously. McIntyre v. Ohio Elections Comm'n , 514 U.S. 334, 341-51, 357, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995) ; Mobilisa , 217 Ariz. at 108, ¶ 11, 170 P.3d at 717. Those rights include speech on the internet.
*1017 Reno v. ACLU , 521 U.S. 844, 870, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997). Furthermore, the Arizona Constitution also provides that "[e]very person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right." Ariz. Const. art. 2, § 6. The Arizona Constitution has been interpreted broadly, and in certain circumstances provides greater protection than the First Amendment. Mountain States Tel. & Tel. Co. v. Ariz. Corp. Comm'n , 160 Ariz. 350, 354-55, 773 P.2d 455, 459-60 (1989) ; Sign Here Petitions LLC v. Chavez , 243 Ariz. 99, 104, ¶ 10, 402 P.3d 457, 462 (App. 2017). However, our courts have yet to expressly find a right to speak anonymously or pseudonymously under the Arizona Constitution. But cf. Mountain States , 160 Ariz. at 357, n.13, 773 P.2d at 462 (suggesting the right to privacy under Ariz. Const. art. 2, § 8 may protect right to anonymity and stating citizens have a right to "gain access to an information source" without risking a breach of anonymity). In recognizing that such a right exists under the federal constitution, this court noted that "[t]he right to speak anonymously, however, is not absolute." Mobilisa , 217 Ariz. at 108, ¶ 12, 170 P.3d 712. Therefore, courts must "balance the competing rights of anonymous internet speakers and parties seeking redress for wrongful communications." Id. ; see generally Lyrissa Barnett Lidsky & Thomas F. Cotter, Authorship, Audiences, and Anonymous Speech , 82 Notre Dame L. Rev. 1537, 1594-1602 (2007) ("If all it takes is an allegation of defamation to uncover a defendant's identity, the right to speak anonymously is very fragile indeed ... [o]n the other hand, anonymity should not immunize the defendant's tortious conduct.").
¶ 12 In balancing the competing interest of anonymity and potential tortious conduct, the parties agree that Mobilisa is the controlling authority on whether an anonymous party's identity is subject to disclosure in a defamation action. Under Mobilisa , the party requesting disclosure of the anonymous party's identity must show:
(1) the speaker has been given adequate notice and a reasonable opportunity to respond to the discovery request, (2) the requesting party's cause of action could survive a motion for summary judgment on the elements of the claim not dependent on the identity of the anonymous speaker, and (3) a balance of the parties' competing interests favors disclosure.
Mobilisa , 217 Ariz. at 114-15, ¶ 40, 170 P.3d at 723-24. Doe does not dispute he had adequate notice under the first prong.
¶ 13 The second prong of the Mobilisa test requires a claim based on at least one statement from Doe to be able to survive a motion for summary judgment on the elements not dependent on Doe's identity. Summary judgment is appropriate if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Orme Sch. v. Reeves , 166 Ariz. 301, 309-10, 802 P.2d 1000, 1008-09 (1990). Both parties agreed at oral argument that an analysis under the private figure standard was appropriate.[1] USAR's burden at trial would be to demonstrate by a preponderance of the evidence that the statements were false and negligently made. However, in reviewing a hypothetical summary judgment motion in a defamation case under Mobilisa , the court views the evidence in the light most favorable to the anonymous speaker. Mobilisa , 217 Ariz. at 113, ¶ 34, 170 P.3d at 722. Accordingly, USAR "must present evidence sufficient to establish a prima facie case with convincing clarity." See Sign Here , 243 Ariz. at 104, ¶ 14, 402 P.3d at 462.
¶ 14 "Under Arizona common law, a defamatory publication by a private figure on matters of private concern 'must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach that person's honesty, integrity, virtue, or reputation.' " Sign Here , 243 Ariz. at 104, ¶ 15, 402 P.3d at 462 (quoting *1018 Turner v. Devlin , 174 Ariz. 201, 203-04, 848 P.2d 286, 288-89 (1993) ). The court first decides whether "under all the circumstances, [the] statement is capable of bearing a defamatory meaning." Yetman v. English , 168 Ariz. 71, 79, 811 P.2d 323, 331 (1991). If so, the jury may then decide "whether the defamatory meaning ... was in fact conveyed." Id.
¶ 15 Doe argues his statements were substantially true. In a defamation action, truth is an absolute defense. Read v. Phoenix Newspapers, Inc. , 169 Ariz. 353, 355, 819 P.2d 939, 941 (1991). A defamatory statement that damages a plaintiff's reputation is actionable only if the inaccuracy changes the "substantial sting" of an otherwise true statement. Fendler v. Phoenix Newspapers, Inc. , 130 Ariz. 475, 480, 636 P.2d 1257, 1262 (App. 1981). The burden rests on the plaintiff to show triable issues, and therefore the falsity of the statements made, because to hold otherwise would have a chilling effect on free speech. See Read , 169 Ariz. at 356-57, 819 P.2d at 942-43 ; Sign Here , 243 Ariz. at 104, ¶ 14, 402 P.3d at 462.
¶ 16 The superior court found USAR could prove six of the statements were false. Because only one statement capable of surviving a motion for summary judgment is necessary to deny the motion to quash, the court did not review the remaining statements made by Doe. Doe challenges the superior court's findings on the statements reviewed.
1. USAR Claims that "the California Desist and Refrain Order states that the 'goal' was to raise $10 million, not ... $30 million," and "USAR has never raised $30 million," Resulting in Defamation.
¶ 17 In a post, Doe stated that "USAR 'bilked' investors out of $30 million." USAR argued that such a claim was defamatory because the goal in California was to raise $10 million, not $30 million, and USAR has never raised $30 million. Doe maintained that a discrepancy in the amounts of money USAR sought to raise, or did raise, did not establish the falsity of his statements because the amount of money to be raised is not the "substantial sting" of the statement, which was that USAR fraudulently raised funds. Because the original statement-that "USAR 'bilked' investors out of $30 million"-would be no less derogatory if it stated "$10 million," we agree. See Read , 169 Ariz. at 355, 819 P.2d at 941 (determination of substantial truth looks at whether the literal truth would have made a material difference).
¶ 18 USAR contends the difference in the amount of money is large enough to alter the defamatory sting. However, Doe was asserting that USAR fraudulently attempted to raise large sums from investors, and therefore the amount of money actually raised is much less significant than the fact of fraudulent conduct. See Sign Here , 243 Ariz. at 106-07, ¶ 25, 402 P.3d at 464-65 (the "general tenor" was not to report the exact number involved in the statement, but the action itself); Fendler , 130 Ariz. at 480, 636 P.2d at 1262. Accordingly, these statements do not establish the falsity of Doe's statement such that it would survive a motion for summary judgment.
2. USAR Claims that "the Maryland documents describe two Maryland investors in [International Energy Resources, Inc. ("IER") ], not USAR, who lost a total of $62,500, not $30 million," and "Maryland's Cease and Desist Order was against another entity, IER, and not against USAR."
¶ 19 Disputing Doe's "bilked" statement further, USAR maintained that the two Maryland investors lost only $62,500 and not $30 million, and therefore the statement was false. Doe's "bilked" statement was not wholly based on the two Maryland investors included in the Maryland cease and desist order. While some of Doe's statements referred to the Maryland order, he did not identify the Maryland order as the exclusive basis for the $30 million claim. As stated above, the "substantial sting" of Doe's statements was the fraudulent practices of USAR, not the specific amounts of money any one investor lost by investing. See Fendler , 130 Ariz. at 480, 636 P.2d at 1262 (damage to reputation of the plaintiff came from conviction of crime, not his presence in a prison).
*1019 ¶ 20 USAR further contends that any reference to the Maryland cease and desist order was false because the order was against IER and not USAR, and specifically points to Doe's statement that, "Three different state securities commissions found the securities offered by USAR to be illegal." Doe claims IER and USAR are not distinct entities because IER is a wholly owned subsidiary of USAR, has the same business address, and has the same CEO and founder (Owen). Therefore, Doe asserts it is irrelevant that the Maryland Cease and Desist Order named IER and not USAR. Additionally, Doe maintains "[t]he sting of violating anti-fraud provisions of securities law in three states rather than two is inconsequential." We agree. That the Maryland cease and desist order did not specifically identify USAR does not render Doe's statement substantially false.
¶ 21 A reasonable person reading Doe's statement would not distinguish the actions of IER and USAR based on the corporate structure or their operation. As Doe identified in his petition, USAR and IER have the same CEO and founder, same address, and often the same ventures. USAR's response acknowledges its ownership and operation of the Chastain Mine. The management of the "Chastain Mine Joint Venture" was the subject of the Maryland cease and desist order identified by Doe, and as such, a person reading Doe's statements regarding the two companies could reasonably interpret the two corporations to be equally liable for the management of the Chastain Mine. See Yetman , 168 Ariz. at 76, 811 P.2d at 328 (when considering whether alleged defamatory statements are actionable assertions of fact, courts review whether a statement "stated or implied an assertion of objective fact 'from the point of view of the reasonable person' "). Furthermore, California and Washington found no reason to distinguish the actions of these two corporate entities, and mentioned both by name in their respective cease and desist orders. Finally, the "substantial sting" of Doe's statements is not altered in any significant way because only two states found USAR's conduct in violation of securities law, instead of three. See Read , 169 Ariz. at 355, 819 P.2d at 941 ("Slight inaccuracies will not prevent a statement from being true in substance, as long as the 'gist' or 'sting' of the publication is justified.") (quoting Heuisler v. Phoenix Newspapers, Inc. , 168 Ariz. 278, 285, n.4, 812 P.2d 1096, 1103 (App. 1991) ); Sign Here , 243 Ariz. at 107-08, ¶ 30, 402 P.3d at 465-66 ; Fendler , 130 Ariz. at 480, 636 P.2d at 1262. Thus, these statements also do not establish the falsity of Doe's statements.
3. USAR Claims that Doe's Statements that USAR's Operation is a "Scam" is Refuted by an Affidavit that "Kevin Jones, an expert geologist, opines in his declaration that the Congress Mine Tailings Project is not worthless, and that USAR's mining projects held tremendous potential."
¶ 22 Doe referred to USAR's operation in several posts as a "scam," and stated "[Kevin Jones's company, Cardinal Resources, Inc.] did a series of technical reports in 2006 on the Congress Mine that Owen then used in the same fraudulent fashion up through the current time to promote the same bogus mining project." USAR presented an affidavit from geologist and president of Cardinal Resources, Inc., Kevin Jones, that stated "the Chastain Mine a/k/a the Rex Mine, hold [sic] substantial potential reserves in gold, silver, and other precious metals." Relying on the affidavit, the court found Doe's statements would survive a summary judgment motion. We disagree.
¶ 23 Most of the Jones affidavit concerned the "Congress Mine," which USAR admits in its response "is not owned or operated by USAR." The only statement in the affidavit relating to USAR's "Chastain Mine" is at the end of the affidavit, and states simply, "the Chastain Mine a/k/a the Rex Mine, hold [sic] substantial potential reserves in gold, silver, and other precious metals." This statement alone would not be sufficient to establish the falsity of Doe's statement under the summary judgment standard in a defamation case, which requires evidence "sufficient to establish a prima facie case with convincing clarity." See Read , 169 Ariz. at 356-57, 819 P.2d at 942-43 ; Sign Here , 243 Ariz. at 104, ¶ 14, 402 P.3d at 462 ; see also Ariz. R. Civ. P. 56(e) (opposing party must set forth "specific *1020 facts" to defeat a motion for summary judgment); Florez v. Sargeant , 185 Ariz. 521, 526, 917 P.2d 250, 255 (1996) ("[A]ffidavits that only set forth ultimate facts or conclusions of law can neither support nor defeat a motion for summary judgment."). The affidavit provides no facts supporting the legitimacy of the Chastain Mine. While the geologist describes extensive studies and testing done on the Congress Mine, and declares he has personally processed mine tailings at the Congress Mine, he makes no such claim regarding the Chastain Mine. USAR's response is equally conclusory when attempting to rebut Doe's argument. USAR simply quotes the geologist's statement from his affidavit and then asserts: "Thus, the [affidavit] created a genuine issue of material fact." The conclusory statements by the geologist are insufficient to establish the falsity of Doe's statements.
4. USAR Claims that Doe's Statement that USAR and Vast Mountain Development are the Same Entity is Demonstrably False.
¶ 24 Finally, the superior court cited a declaration stating that USAR and Vast Mountain Development are separate entities as evidence establishing the falsity of Doe's statement that "USAR is the same entity as Vast Mountain Development which is engaged in fraudulent conduct." Again, the "substantial sting" of Doe's alleged defamatory statement is that USAR engaged in fraudulent activities. While USAR and Vast Mountain Development may be separate entities, the defamatory thrust of Doe's statement is again the fraudulent actions of USAR, which are not proven substantially untrue by USAR's assertion that it is a separate entity than Vast Mountain Development.[2]
CONCLUSION
¶ 25 We accept special action jurisdiction and grant relief because the superior court erred by finding USAR's claims could survive a motion for summary judgment based on the six statements reviewed in the superior court's order. Because we find USAR's claims would not survive a motion for summary judgment under the second prong of Mobilisa , we need not reach the third prong, which balances the competing parties' interests. Mobilisa , 217 Ariz. at 114-15, ¶ 40, 170 P.3d at 723-24. Nor do we address the other arguments raised by Doe. See In re Eric L. , 189 Ariz. 482, 486, 943 P.2d 842, 846 (App. 1997) (the court need not review other arguments if one argument is dispositive). Accordingly, we remand to the superior court to review USAR's remaining claims under the Mobilisa analysis and determine if any of the other claims raised by USAR could survive a motion for summary judgment.

Under the public figure standard, the plaintiff must make an additional showing of "actual malice" on the part of the speaker, "that is, with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times Co. v. Sullivan , 376 U.S. 254, 280-83, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) ; see Dombey v. Phoenix Newspapers, Inc. , 150 Ariz. 476, 480-81, 724 P.2d 562, 566-67 (1986).

Doe provided evidence that, like USAR and IER, Vast Mountain Development is part of the same enterprise. All three companies share the same founder, CEO, and business address. While we need not make such a determination in this decision, the evidence presented suggests these entities are closely related. See Walker v. Sw. Mines Dev. Co. , 52 Ariz. 403, 414, 81 P.2d 90 (1938) ("[W]hile in general, a corporation is a separate legal entity, nevertheless when one corporation so dominates and controls another as to make that other a simple instrumentality or adjunct to it, the courts will look beyond the legal fiction of distinct corporate existence, as the interests of justice require...."); Keg Rests. Ariz., Inc. v. Jones , 240 Ariz. 64, 73, ¶ 31, 375 P.3d 1173, 1182 (App. 2016).