NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE REYNALDO P.

No. 1 CA-JV 18-0058
FILED 8-2-2018

Appeal from the Superior Court in Maricopa County
No.   JV202102
The Honorable Lisa Ann VandenBerg, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Phoenix
By Louis Harvey
*Counsel for Appellant*

Maricopa County Attorney's Office, Phoenix
By Adena J. Astrowsky
*Counsel for Appellee*

**MEMORANDUM DECISION**

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Paul J. McMurdie joined.

**J O H N S E N**, Judge:

¶1          Reynaldo P. ("Juvenile") appeals the superior court's order imposing restitution.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2          On March 30, 2017, Juvenile joined an argument between J.M. and another minor, and ultimately threw a rock at J.M., striking him on the back of his head.[1]  Paramedics transported J.M. to the hospital, where doctors determined he had a skull fracture.  He was transferred to Phoenix Children's Hospital, where doctors treated his fracture and instructed him to return within six weeks for follow-up treatment.  J.M.'s mother twice brought him back to the hospital in May 2017, once for the follow-up visit and a second time for anxiety and depression he experienced following the March 30 incident.

¶3          The superior court adjudicated Juvenile delinquent of aggravated assault, a Class 3 felony under Arizona Revised Statutes ("A.R.S.") § 13-1204(A)(2), (E) (2018).[2]  The court subsequently placed him on probation and set a restitution hearing.

¶4          On December 29, 2017, J.M.'s mother filed a Verified Victim Statement ("VVS") containing medical bills incurred from the assault totaling a little more than $7,700.  The bills confirmed J.M. as the hospital patient and listed dates and the department of service (neurosurgery or emergency room), but provided no further details about J.M.'s medical treatment.  Juvenile's counsel asked J.M.'s mother for an interview or further explanation regarding the medical bills, but, exercising her rights under the Victim's Bill of Rights, she declined.  *See* Ariz. Const. art. 2, § 2.1(A)(5).  Juvenile filed a prehearing motion arguing that the victim's documentation was insufficient and did not show whether the claimed expenses were reasonable, but the superior court declined to rule on the motion.

---

[1]      We view the facts in the light most favorable to affirming the superior court's order.  *In re Maricopa County Juv. Action No. JV-132905*, 186 Ariz. 607, 608, n.1 (App. 1996).

[2]      Absent material revision after the date of an alleged offense, we cite a statute's current version.

**¶5** At a restitution hearing on February 6, 2018, J.M.'s mother testified that the expenses in the VVS included ambulance rides and hospital visits for J.M. in March and May 2017. She further testified that each expense resulted from J.M.'s head injury. Juvenile also testified at the hearing and was represented by counsel, who cross-examined the victim's mother. As a condition of Juvenile's probation, the superior court ordered him to pay $7,700 in restitution; he timely appealed that order. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 8-235(A) (2018) and 12-120.21(A)(1) (2018).[3]

## DISCUSSION

**¶6** Juvenile argues the superior court abused its discretion in ordering restitution based upon the victim's "wholly deficient" medical documentation and by issuing a "punitive" restitution order. To the contrary, the VVS, the testimony of J.M.'s mother and other evidence before the court reasonably supported the restitution order.

### A. General Principles.

**¶7** Once a juvenile is adjudicated delinquent, the superior court must order him to make full or partial restitution to the victim. A.R.S. § 8-344(A) (2018); *see also In re Stephanie B.*, 204 Ariz. 466, 470, ¶ 16 (App. 2003). The court may set restitution in an amount necessary to make the victim whole. *See In re William L.*, 211 Ariz. 236, 239, ¶ 12 (App. 2005). Restitution may be awarded for losses that: (1) are economic, (2) would not have occurred but for the delinquent conduct, and (3) are directly caused by the delinquent conduct. *In re Andrew C.*, 215 Ariz. 366, 368, ¶ 9 (App. 2007); *see*

---

[3] We have examined our own jurisdiction. *See Riendeau v. Wal-Mart Stores, Inc.*, 223 Ariz. 540, 541, ¶ 4 (App. 2010) (court of appeals has "an independent duty to examine our own jurisdiction."). Because the disposition order was filed after Juvenile's birthday, a practice that our supreme court discourages, it did not become final and appealable before Juvenile turned 18. *See* Ariz. R.P. Juv. Ct. 104(A); *Lindsey M. v. Ariz. Dep't of Econ. Sec.*, 212 Ariz. 43, 45, ¶ 5 (App. 2006) (final order must be in writing, signed by the court, and filed with the clerk). Notwithstanding the late filing, we have jurisdiction over this appeal because the superior court entered its signed restitution order on February 6, 2017, resolving all issues ten days before Juvenile turned 18. *Cf. In re Eric L.*, 189 Ariz. 482, 484 (App. 1997) (delinquency disposition order "necessarily interlocutory in nature when restitution remains an unresolved issue").

*also* A.R.S. § 13-105(16) (2018) (economic loss is "any loss incurred by a person as a result of the commission of an offense").

¶8          We review a restitution order for an abuse of discretion. *See In re Erika V.*, 194 Ariz. 399, 400, ¶ 2 (App. 1999). We will affirm the order if it bears a reasonable relationship to the victim's loss, *see State v. Wilson*, 185 Ariz. 254, 260 (App. 1995), and is supported by a preponderance of the evidence, *Stephanie B.*, 204 Ariz. at 469-70, ¶ 15.

**B.     The Restitution Order Bears a Reasonable Relationship to the Victim's Loss.**

¶9          The VVS contained medical bills listing J.M. as the patient for treatment received in March and May 2017. Although the bills did not detail the medical services J.M. received, his mother testified the treatments were for injuries sustained when Juvenile hit J.M.'s head with a rock on March 30, 2017. At Juvenile's delinquency hearing, witnesses testified J.M.'s head was bleeding and that paramedics transported him by ambulance to a hospital. There, doctors completed a CT scan and determined that J.M.'s skull was fractured. He then was transported in a second ambulance to Phoenix Children's Hospital, where the neurosurgery unit treated his fracture. The March hospital bills totaled $3,086.39 based on J.M.'s two ambulance rides and hospital treatment administered directly after the incident.

¶10          The record also supports a correlation between the May bills and J.M.'s injury. Doctors who treated the skull fracture directed J.M. to return for follow-up care within three to six weeks. J.M.'s mother testified that in the interim her husband lost his job, and on April 30, 2017, the family lost their medical insurance coverage. In May, when it was time for J.M.'s follow-up, she therefore took J.M. to the emergency room. The day after the May emergency room visit, J.M.'s mother contacted a mental health "crisis team" because J.M. was "acting out and [she] was afraid for his mental health." The victim's mother testified that J.M.'s "behavior changed after the head injury," he "became anxious a lot," "wouldn't leave the house," and "couldn't sleep." She explained that his behavior appeared to "progress into depression and a lot of anger." That call for help resulted in a second hospital visit. J.M.'s mother presented bills totaling $4,617.80 from the two May visits.

¶11          The VVS documents, along with J.M.'s mother's testimony, were sufficient to show by a preponderance of the evidence that J.M.'s medical bills related directly to Juvenile's delinquent conduct. Likewise,

the court's restitution order was reasonable. The bills showed a total economic loss of $7,704.19 – nearly the exact amount the court ordered in restitution.

¶12 We are not persuaded by Juvenile's assertion that the court's restitution order was punitive because Juvenile has no "present ability to pay" the restitution amount. The superior court considered this fact and weighed it against Juvenile's testimony that he was in high school, on track to graduate and could get a job. *See In re Andrew A.*, 203 Ariz. 585, 587, ¶ 9 (App. 2002) (appellate court does not reweigh evidence but determines only whether reasonable evidence supports restitution order); *In re Kristen C.*, 193 Ariz. 562, 563-66, ¶¶ 8-16 (App. 1999) (order requiring juvenile to pay $6,000 in restitution three days before her eighteenth birthday was not punitive in nature when it made the victim whole).

## C. The Court Did Not Restrict Juvenile's Due-Process Rights.

¶13 Juvenile next argues that the court violated his due-process rights by preventing him from acquiring "backup documentation" from J.M.'s mother for the medical bills. Due process requires only that a party in a restitution hearing receive an opportunity to be heard "at a significant time and in a significant manner." *In re Kory L.*, 194 Ariz. 215, 219, ¶ 11 (App. 1999) (quoting *State v. O'Connor*, 171 Ariz. 19, 23 (App. 1992)). Here, A.R.S. § 8-344(B) authorized the court to consider the VVS, which the victim's mother submitted more than a month before the restitution hearing. At the restitution hearing, Juvenile had an opportunity to call and cross-examine witnesses, present evidence and object through counsel. In this manner, Juvenile had a full and fair opportunity to challenge the victim's evidence at the hearing.

¶14 The Victim's Bill of Rights entitled the victim and his mother to decline interviews with Juvenile's counsel and decline to answer counsel's prehearing questions. Ariz. Const. art. 2, § 2.1(A)(5); A.R.S. § 13-4433 (2018); *State v. Leonardo ex rel. County of Pima*, 226 Ariz. 593, 594, ¶ 5 (App. 2011) (crime victim has right "to refuse an interview, deposition, or other discovery request by . . . the defendant's attorney") (quotation omitted). Juvenile argues that under *State ex. rel. Romley*, 172 Ariz. 232 (App. 1992), the court improperly "elevated victim's rights above any due process right[s]" by limiting his ability "to gain access to any backup documentation in possession of the victim."

¶15 *Romley* held that a criminal defendant's due-process rights to present a defense and effectively cross-examine witnesses can prevail over

rights accorded a victim under state law.  172 Ariz. at 236.  The defendant in that case was accused of stabbing her husband; she argued she did so in self-defense and sought her husband's medical records, which she said would show he suffered from a multiple-personality disorder that caused him to be violent.  *Id.* at 234.  This court held due process required production of records that were "exculpatory" and "essential" to the defense.  *Id.* at 239.  Further, the court stated, "[a] defendant must be afforded an opportunity to effectively cross-examine or impeach the victim, and . . . must be allowed to cross-examine even on matters that may be potentially revealing, embarrassing or prejudicial to the victim."  *Id.* at 240.

¶16        Juvenile argues the court here erred by failing to order production of additional records concerning J.M.'s treatment.  But, by contrast to the records sought in *Romley*, the backup records Juvenile sought were not essential to his defense.  He was allowed to cross-examine J.M.'s mother about the VVS, and there is no suggestion that any of the medical treatment for which she was billed was unnecessary or not related to his crime.

¶17        Juvenile also asserts that without "proper billing, invoicing, insurance claim documents, and billing adjustment evidence," he was unable to assess "whether the victim received any offset against the billed amounts from any payments made by insurance providers or hospital adjustments."  But the court allowed Juvenile to examine J.M.'s mother about adjustments the hospitals made to the bills.  And any insurance offsets were immaterial because a juvenile may be held responsible for the full economic loss arising from his delinquent actions regardless of a victim's insurance coverage.  *See In re Pima County Juv. Action No. 45363-3*, 151 Ariz. 541, 541 (App. 1986) ("[T]he collateral source rule prohibits the minor from benefiting from the victim's foresight in obtaining insurance coverage.").  Still, the court allowed Juvenile's counsel to cross-examine the victim's mother about whether she had medical insurance at the relevant times.  She testified she did not have coverage in May and that although she obtained medical insurance for J.M. on June 1, 2017, that coverage was not retroactive.

¶18        Juvenile's main argument is that the court erred by precluding him from cross-examining J.M.'s mother about whether she had applied for other insurance after her husband lost his insurance through his job, and whether she had asked the hospitals to adjust their bills downward due to the family's financial situation.  But whether a victim has mitigated his or her damages is irrelevant at a restitution hearing.  *See State v. Reynolds*, 171 Ariz. 678, 682 (App. 1992) (civil concept of failure to mitigate "simply do[es]

not fit into the framework of the criminal law"); *see also In re Ryan A.*, 202 Ariz. 19, 25, ¶ 28 (App. 2002) (victim's mother awarded $300 for lost wages from missed appointments even though juvenile argued she could have rescheduled those clients).  As noted, the court allowed Juvenile to ask the victim's mother whether the hospitals already had adjusted any of her medical bills, allowing him to verify the economic loss she was claiming.  In doing so, the superior court properly applied the law.

**¶19**          In sum, Juvenile had a full and fair opportunity to challenge the evidence at the restitution hearing, and the court's evidentiary rulings did not violate his due-process rights.

## CONCLUSION

**¶20**          For the foregoing reasons, we affirm the superior court's restitution order.

